In an attempt to start a gasoline engine on December 27, 1939, while engaged in the scope and course of his employment with defendant L.C. Maples, plaintiff, Lester Delafield, was struck on the nose by the crank being used, causing the dislocation and fracture thereof. For a period of seven weeks thereafter he was furnished medical attention and paid workmen's compensation.
Later, this suit, in which plaintiff claims benefits as for total and permanent disability under the provisions of the Louisiana Employers' Liability Act, Act No. 20 of 1914, was brought against the named employer and the latter's insurer, the Employers' Liability Assurance Corporation, Ltd. In the petition he asserts that the injury caused infection of the ethmoid and sphenoid cells, resulting in his suffering constant headaches and fever, and that he is and will always be unable to do work of any reasonable kind or character.
The defense, as shown by the answer, is that the injury resulting from the accident has healed, and that plaintiff has been paid compensation for the full period of his disability.
The district court, on completion of the trial, held that plaintiff is totally disabled as a result of the accident, but that the disability is temporary rather than permanent; and, accordingly, there was granted a solidary judgment against defendants for compensation during the period of disability but not exceeding 300 weeks, less that previously paid, and, additionally, for medical expenses.
Appeals from the judgment were perfected by both plaintiff and defendants.
Plaintiff's only complaint here concerns the district court's refusal to classify the disability found as permanent and to award compensation for a period not exceeding 400 weeks. The entire judgment is assailed by defendants.
As stated in the brief of defense counsel, the following three questions are furnished for our determination:
1. Whether or not Lester Delafield was and is disabled, and if he is disabled, what is the extent of his disability?
2. Is there any causal connection between the accident sustained by Delafield on December 27, 1939, and his present complaints upon which his alleged disability is based?
3. If Delafield is disabled as the result of the accident of December 27, 1939, what is the proper judgment?
The principal occupation of plaintiff is that of farming, he being the owner of a 40-acre tract of land in Webster Parish, Louisiana, on which there is grown cotton, corn, beans and peas. For a number of years prior to the accident, he cultivated that tract and also aided in farming an adjoining 40 acres owned by his sister. During the summer and winter periods, or as he says "between the crops", odd jobs involving only manual labor were undertaken.
Plaintiff had been working for defendant L.C. Maples for about twelve weeks when the aforementioned accident occurred. Immediately following his injury, he consulted a doctor in Cotton Valley several times. Relief was not obtainable there, so the employer sent him to a physician in Shreveport, who, on January 2, 1940, found that a fractured nose existed. Specifically, there was a depressed fracture of the left nasal bone and a springing out of the right nasal bone. These bones were *Page 706 
set and a splint applied. Treatments continued until February 23, 1940, when the workman was discharged and his compensation payments stopped. During the entire period of treatment he complained of headaches. With reference to the discharge, this physician testified: "I told him I could not do any more for him. I did not say he was well. I never say a man is well because I never know. It was the best I could do for him. I couldn't do any more for him. * * * I would say that I turned the man loose or discharged him because I could not see any pathology to account for his headaches. * * * In so far as I could tell he was cured. Now, as to his headaches, I have not denied that the man had headaches, but I could not see any reason for him having headaches."
Between February 23, 1940, and the date of trial, or June 27, 1940, a physician in Minden, Louisiana, treated plaintiff at least once, sometimes more often, each week; and during that period other doctors examined him.
It is convincingly shown by the record, we think, that plaintiff experienced the total disability found by the district court. The lay testimony is to this effect, it disclosing that the hard manual labor to which he is accustomed cannot now be performed. Also such conclusion finds support in the medical proof. Whenever his temperature was taken after the accident, and this was done on numerous occasions, fever was found to exist; and most of the physicians testifying believe him to be so disabled.
There was offered and filed in evidence a motion picture film revealing plaintiff pursuing the work of plowing during the afternoon of June 20, 1940. Before its introduction, however, he had admitted the attempting of that act for several hours of the mentioned day, and further admitted that he had tried to perform duties such as milking, feeding chickens and working a small garden. But always following these efforts, as the lay testimony discloses, he complained of headaches and was compelled to go to bed and take medicine. Furthermore, the mentioned activities were undertaken at great risk to his health, for he then endured fever. Pertinent to this issue is the answer given by a defense medical expert when asked if he found plaintiff, in his examination made the day before the trial, to be disabled. It was: "Well not objectively, I couldn't say he was disabled except he had a little fever and when a man has a little fever you hesitate about advising him to do work, he had a little fever."
More difficult of solution is the question of whether or not there was proved causal connection between the accident and plaintiff's disability. The record contains a mass of medical proof respecting this issue, the detailing of which would serve no useful purpose and will not be undertaken, and reveals a serious conflict of opinion between the physicians testifying for the respective litigants.
It clearly appears that prior to the accident plaintiff was able to perform work requiring manual labor, he endured no headaches or fever, and he had not received any medical attention for many years. Complaints of severe headaches were registered immediately after the injury occurred and constantly up to the date of the trial. Of course, it is realized, as defense counsel suggests, that headache trouble is strictly a subjective symptom, and its existence can be proven only by the person afflicted with it. There can be no question, however, about plaintiff's continuous running of fever. Whenever his temperature was taken, and this was done on numerous occasions, it was present.
While undergoing treatment from the physician who set the fractured nose, and following the development of a cold, plaintiff was hospitalized because of a sinus ailment. He was in the sanitarium several days, during which period, specifically on January 24, 1940, the skull sinuses were X-rayed. The pictures disclosed the existence of sinusitis to the extent of a "little thickening in the ethmoid posterior cell."
X-rays were also made on March 13, 1940, and again on June 7, 1940. The reading of these pictures in comparison with those first taken showed that the sinus involvement was progressive and had grown worse.
Laboratory tests made by the physician attending plaintiff after February 23, 1940, indicated the presence of malaria in the patient's blood stream. Following this finding, he was given more than 200 grains of quinine and also an anti-malarial preparation known as atabrine. Notwithstanding such treatment, which usually completely eradicates malaria, the fever persisted. *Page 707 
Three physicians expressed the opinion that plaintiff's disabling condition is traceable to and results directly from the aforementioned accident and injury, although they said that there is a possibility that something else is responsible for it. Two others were of the contrary belief, while still another formed no positive conclusion as to the cause; but all of these three declared that sinusitis, such as plaintiff has, can result from trauma, although an occurrence of that kind is unusual and unlikely.
After thoroughly studying the medical proof, and weighing it in the light of the testimony of the lay witnesses showing that headaches and fever did not exist before the accident, we are inclined to the view that the trial judge correctly decided the instant question in the affirmative. Causal connection between the accident and disability, we think, has been shown by a preponderance of the evidence and with the legal certainty required; and the several cases cited by defense counsel, announcing the familiar doctrine that compensation awards cannot be predicated on possibilities or probabilities, are inapplicable.
Complete relief from the discussed sinusitis and a return to normalcy of plaintiff's physical condition can never be obtained, the medical proof preponderately discloses, without his undergoing a major operation. According to the settled jurisprudence of this state, an injured employee will not be compelled by the courts to submit to a major operation, the purpose of which would be to reduce the existing disability. Finley v. Texas Company, La.App., 162 So. 473, and cases therein cited. Plaintiff's total incapacity, therefore, must be held to be one of indefinite duration or of a permanent nature; and by reason thereof it is governed by Subsection 1 (b) of Section 8 of the Employers' Liability Act, Act No. 242 of 1928, p. 357, providing for compensation payments "during the period of disability, not, however, beyond four hundred weeks." Hibbard v. Blane et al., La.App., 183 So. 39, Schneider v. Travelers Insurance Company, La.App., 172 So. 580 and cases therein cited.
Accordingly, for the reasons assigned, the judgment appealed from is amended to the extent of awarding the compensation named therein during plaintiff's disability, but not exceeding 400 weeks; and, as amended, it is affirmed.
Defendants shall pay costs of both courts.
DREW and TALIAFERRO, JJ., concur.