This case is here on appeal from a judgment sustaining an exception of no cause and no right of action to a rule filed by defendants on plaintiff to show cause why defendants should not discontinue and cease payments of compensation to him until such time as he submits himself for a complete, thorough and general malarial examination. The entire record in the original suit between plaintiff and defendants is a part of the record before us. *Page 42 
In the original petition plaintiff alleged that while in the employ of defendant Maples and engaged in cranking a gasoline engine, the crank slipped from its connection with the engine and struck him on the base of the nose, fracturing and dislocating it. He alleged as the result of the injury he was suffering from a sphenoidal sinusitis and that he had since the accident suffered continuous headaches and run temperature.
Defendants denied these allegations of incapacitation and alleged that plaintiff was disabled for only seven weeks for which time he was paid compensation. The lower court awarded judgment to plaintiff for total temporary disability and gave him compensation not to exceed 300 weeks. On appeal here we amended the judgment and awarded plaintiff compensation not to exceed 400 weeks for total permanent disability, finding that he was suffering from sinusitis which was progressive and had grown worse since the time the X-rays were taken on March 13, 1940, and June 7, 1940.
We also found that the laboratory tests made by the physicians attending plaintiff after February 23, 1940, indicated the presence of malaria in his blood and that following that finding he was given 200 grains of quinine and an anti-malarial preparation known as atabrine and although this treatment usually eradicates malaria, plaintiff's fever persisted and has continued to the date of trial below.
We further found in that opinion,
"Complete relief from the discussed sinusitis and a return to normalcy of plaintiff's physical condition can never be obtained, the medical proof preponderately discloses, without his undergoing a major operation." (See former opinion, reported in La.App., 2 So.2d 704, 707)
On August 22, 1941, defendants filed the following petition and prayer for rule on plaintiff to show cause why compensation payments should not cease:
"1. That Lester Delafield, the plaintiff in this proceeding, was accidentally injured while in the employ of L.C. Maples on or about December 27, 1939, and was paid Workmen's Compensation for a period of approximately seven weeks thereafter; that on May 29, 1940, he instituted Workmen's Compensation proceedings against your defendants, which proceeding was duly tried and judgment rendered in favor of plaintiff on September 17, 1940, all as will be shown more fully by reference to the record in this proceeding.
"2. That the matter was duly appealed by the defendants to the Court of Appeal for the Second Circuit of Louisiana, which Court on April 4, 1941, rendered a decision amending the judgment of the trial court by increasing the award for Workmen's Compensation during plaintiff's disability from 300 weeks to 400 weeks, which judgment is now final, all as will be shown more fully by the record in this proceeding.
"3. That the symptoms of which the plaintiff complained in support of his disability, consisted of headaches and fever; that there were no objective symptoms to support the complaint of headaches; that the only objective symptom relied upon by the plaintiff in support of the fever of which he was complaining, and which he, in fact, had from time to time, was a condition of sinusitis; that the reasoning of both the trial court and the Court of Appeal in awarding judgment to plaintiff was and is that the fever with which Delafield is afflicted and from which he suffers is the direct result of the sinusitis suffered by him, which, in turn, is a direct result of the trauma sustained by him on December 27, 1939.
"4. That the trial court and the Court of Appeal both found as a fact that the plaintiff was suffering from sinusitis and that this condition disabled him, and the Court basing its findings on the evidence of plaintiff's doctors, further found as a fact that the plaintiff could not return to normalcy with respect to the sinusitis condition without undergoing a major operation which he was not obligated to do under the prevailing jurisprudence.
"5. That the plaintiff, Lester Delafield, at the request of the defendants, was examined on June 16, 1941, by Dr. C.L. LaRue, an eye, ear, nose and throat specialist and a member of the Highland Clinic, at Shreveport, La.; that Dr. LaRue submitted a report of his findings on June 17, 1941; that defendants annex hereto and make a part of this pleading the original letter and report submitted by Dr. LaRue, showing the findings from his examination; that according to Dr. LaRue, who examined the plaintiff, Lester Delafield, almost one year after the date of trial held on July 27, 1940, the said Lester Delafield was not *Page 43 
at the time of the examination of Dr. LaRue suffering from sinusitis of any nature; that the tests made by Dr. LaRue included transillumination of the sinuses and digital pressure of the sinuses, as well as X-rays.
"6. That Dr. LaRue was unable to secure by such examination sufficient data and information upon which to base a diagnosis, and he accordingly recommended that the plaintiff, Lester Delafield, be placed in a hospital for several days in order that he might be given a thorough general examination to rule out other causes of his fever, all as will be shown more fully by reference to the letter of Dr. LaRue attached hereto and made a part hereof; that Dr. LaRue was of the opinion that a general examination of Delafield would reveal information of diagnostic value which would not be shown by a mere examination of the head.
"7. That after repeated requests, the plaintiff, Lester Delafield, presented himself for admission to the Highland Sanitarium on August 6, 1941, where he remained until August 8, 1941, during which period of hospitalization he was given a thorough general examination by Dr. Morgan W. Matthews on the staff of the Highland Clinic; that this hospitalization and examination was conducted at the expense of the defendants and pursuant to their request.
"8. That because of the complaints and the objective symptom of fever displayed by Lester Delafield, it was the desired purpose of Dr. Matthews to give to Delafield ten grains of quinine sulphate three times daily for a period of three days in order to determine if malaria were present; that the administering of quinine in such amounts is an accepted and routine method of determining or ruling out the presence of malaria in the system, and that the response of the patient to even so small a quantity of quinine sulphate is of great diagnostic value and is virtually the only method by which the presence of malaria may be determined or negatived; that Dr. Matthews, accordingly, ordered that Delafield be given the desired quinine sulphate in connection with the examination and diagnosis.
"9. That in the course of his examination Dr. Matthews was advised by Delafield that he would refuse all medication because he had been advised by his attorneys to take no medicines at all during the period of hospitalization, and because of this position assumed by Delafield, Dr. Matthews cancelled the order that Delafield be given quinine as was desired by Dr. Matthews, and no further effort was made to conduct such a test.
"10. That because of the failure of Lester Delafield to take the quinine which Dr. Matthews intended for him to take for the purpose of aiding him in his examination and diagnosis, it has been impossible for your defendants to determine whether the plaintiff, Lester Delafield, at the present time is suffering from malaria; that it is impossible to determine or rule out the presence of malaria until a test such as that desired by Dr. Matthews has been conducted, and that the failure of Delafield to agree to take such quinine sulphate has prevented your defendants from securing a complete examination of Delafield's condition.
"11. That in view of the fact that sinusitis no longer exists, there is no possible explanation for the presence of the fever, except that the inadequate and incomplete examination conducted by Dr. Matthews has not ruled out the presence of malaria, and your defendants, accordingly, have not been permitted to determine the true character of the plaintiff's disability or the cause thereof.
"12. That the action of Lester Delafield in refusing to take any medicine and specifically quinine, in connection with the attempted complete examination of his physical condition, has, by virtue of such refusal, forfeited his rights to any and all Workmen's Compensation to which he may be entitled from the date of the said refusal, to-wit, August 6, 1941, and that your defendants should not be required to pay any further compensation and relieved of the liability of further paying compensation until the plaintiff, Lester Delafield, has completely submitted himself to a medical examination and a proper malaria test has been conducted.
"Wherefore, premises considered, your defendants pray that a rule issue herein directed to the plaintiff, Lester Delafield, returnable on a day and at an hour to be fixed by the Court, ordering and directing the said Lester Delafield to show cause why L.C. Maples and Employers' Liability Assurance Corporation, Ltd., should not discontinue and cease the payments of Workmen's Compensation to him, beginning with the payment covering the date of August 6, 1941, and until such time as a complete, *Page 44 
thorough and general malaria examination has been conducted, and at the said trial of the rule, the said rule be made absolute.
"Further pray that upon the continued refusal of the plaintiff, Delafield, to submit to such examination to determine the cause of his condition, defendants herein, L.C. Maples and Employers' Liability Assurance Corporation, Ltd., be fully and completely exonerated and discharged from the payment of any Workmen's Compensation or other benefits under the Louisiana Workmen's Compensation Act, to Lester Delafield."
The rule issued and on the return day thereof plaintiff filed exceptions of no cause and no right of action and filed an answer reserving his rights under his exceptions. The lower court sustained the exceptions of no cause and no right of action and defendants are prosecuting this appeal.
This proceeding is an attempt to invoke the provisions of Sec. 9 of Act No. 20 of 1914 and Sec. 1 of Act No. 38 of 1918 which provide that an injured employee shall submit himself to examination by a qualified medical practitioner provided and paid for by the employer as often as may be reasonably necessary during the pendency of his claim for compensation or during the time he is receiving payments of compensation; and Paragraph 10 of Act No. 20 of 1914, as amended by Act No. 38 of 1918, § 1, which provides the penalty of forfeiture of compensation payments upon refusal to submit to said examinations.
The above sections of the Act provide only for the claimant to submit himself for examination and do not require that he submit himself for treatment, the theory behind the Act being that a claimant has the right to be treated by a physician of his own choosing and is not forced to submit to treatment by a physician of his employer's choice.
With the above sections of the Compensation Act in mind, we will discuss the case here presented:
Plaintiff was awarded compensation for an injury which caused sinusitis and the award was based on that finding. He was not awarded compensation because of malaria or any other disease. According to defendants' petition plaintiff was called and submitted himself for examination on June 16, 1941, which was a little more than two months after the opinion was rendered in the case by us. Dr. C.L. LaRue, an eye, ear, nose and throat specialist, carefully examined plaintiff for sinus trouble, the condition which this Court found to exist and on which its award was made. Dr. LaRue made a written report to defendants' attorney in which he negatived any kind of sinus trouble in plaintiff. On August 6, 1941, plaintiff again, at the request of the defendants, presented himself for examination and was hospitalized for two days. After other examinations were made the examining physician decided to try a course of quinine for the purpose of finding out if such a course of medicine would not cause plaintiff's fever to cease. Plaintiff refused to take the quinine.
We are of the opinion that plaintiff was within his rights in refusing to take the quinine and that defendants were without right in law to require him to take it. The statute requires plaintiff to present himself for examination and not for treatment. There are tests for malaria other than giving a course of quinine. Furthermore, our former opinion shows that plaintiff before trial below was given 200 grains of quinine as well as a course of atabrine and still the fever persisted.
If we should approve the action of the defendants in this case, there would be no end of what could be done under the guise of an examination, for instance, we know there are tests and examinations which disclose the dreaded disease of tuberculosis yet, under defendants' contention, if such tests had been made and showed negative, they would have had the right to confine him in a tubercular sanitarium and force him to take treatment for tuberculosis to see the effect and to see if the fever he has did not cease. Malaria is not the only cause of fever but is only one of the many and if plaintiff were required to take treatment for every disease which causes fever, his treatment would never end until his own end came.
If defendants can show that plaintiff is now suffering with malaria they would show no more than was shown in the first trial below, as our former opinion records, but the court did not allow compensation because of malaria. We allowed compensation because we found plaintiff suffering from sinusitis caused from the blow he received on the nose. In order to set aside the former judgment of this court, defendants are not required to show that *Page 45 
plaintiff has malaria or undulant fever or any other disease. All they are required to prove is that plaintiff at this time is not suffering from sinusitis and they are entitled to examine him for that purpose, which they have done and according to their petition in this rule, have satisfied themselves on that point. If that be true, plaintiff cannot be required to submit to examinations for the purpose of finding out if he has some disease in no way connected with the sinus trouble on account of which he was awarded compensation and certainly cannot be required to submit to treatment for any disease the defendants might imagine he has.
We are convinced the judgment of the lower court sustaining the exceptions is correct and it is affirmed, with costs.