SEAGRAM-DISTILLERS CORPORA-
TION, Plaintiff-Appellee,

v.

NEW CUT RATE LIQUORS, Inc., et al.,
Defendants-Appellants.

No. 11275.

United States Court of Appeals,
Seventh Circuit.

April 4, 1955.

Rehearing Denied April 25, 1955.

Allen H. Schultz, Chicago, Ill., Louis L. Biro, Chicago, Ill., for appellants.

Frank D. Mayer, Leo F. Tierney, Louis A. Kohn, Chicago, Ill., Patrick W. O'Brien, Chicago, Ill., Mayer, Meyer, Austrian & Platt, Chicago, Ill., of counsel, for Seagram-Distillers Corp.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

From an order for a preliminary injunction, granted by the district court, on plaintiff's motion, defendants have appealed.

The verified complaint, as amended, alleges that plaintiff, a Delaware corporation, is engaged throughout the United States in the business of dealing in, selling and distributing alcoholic beverages of standard quality. These beverages, described generally as "Seagram products" and including Seagram's "VO" and "7 Crown," are sold in bottles bearing the trade-marks, brands or names of the producers. Plaintiff is the sole person authorized to sell and distribute Seagram products in Illinois.

It is alleged that during the past several years plaintiff has expended over $500,000 in Illinois alone in advertising Seagram products and, as a consequence, the trade-marks, brands or names under which Seagram products are sold have become widely and favorably known to the trade and public in Illinois. Plaintiff also alleges that the matter in controversy exceeds $3,000.

Plaintiff's complaint further alleges that the sales of Seagram products in Illinois are subject to the provisions of fair trade contracts executed in accordance with the Illinois Fair Trade Act.[1] Furthermore, it is alleged that, prior to the acts complained of, the defendants had received copies of the plaintiff's schedule of fair trade prices stipulated in accordance with the executed fair trade contracts, and also that defendants have refused to discontinue offering for sale or selling Seagram products at less than the aforesaid stipulated prices, and have continued said wrongful conduct by wilfully and knowingly offering for sale and selling said products at prices below those stipulated, and particularly that they advertised in a newspaper on June 15, 1954, that they would sell Seagram products at less than the fair trade prices therefor. Plaintiff further alleges that defendants intend to continue said conduct to the irreparable damage of the good will and business of the plaintiff, thereby impairing the value of the trade-marks, brands and names under which Seagram products are sold, and unless defendants are immediately enjoined and restrained from continuing such conduct, plaintiff will suffer further irreparable damage.

There was a prayer for a preliminary injunction restraining defendants from

1. Ill.Rev.Stat.1953, c. 121½, §§ 188–191.

advertising, offering for sale or selling Seagram products at less than the stipulated prices, and for a final decree to the same effect.

Defendants' verified answer denied all of the material allegations of the plaintiff, including the allegations that the matter in controversy, exclusive of interest and costs, exceeded the sum or value of $3,000, that plaintiff had no adequate remedy at law, that fair trade contracts had been executed in accordance with the Illinois Fair Trade Act, and that defendants had violated the provisions of said alleged contracts. The answer also stated (1) that plaintiff had abandoned and waived any and all rights it may have had as a result of the execution of alleged price-fixing contracts; (2) that the alleged price-fixing contracts do not comply with the provisions of the Illinois Fair Trade Act in that they lack the immediate vendor-vendee relationship required to bring a price-fixing contract within the exceptions provided under the provisions of said act; and (3) that the Illinois Fair Trade Act is unconstitutional and consequently plaintiff's alleged price-fixing contracts executed thereunder are illegal and void.

The court held a hearing on plaintiff's motion for a preliminary injunction, at which time evidence was taken.

At this hearing vice president Teece of plaintiff, and vice president Lind of plaintiff and Joseph E. Seagram & Sons, Inc., of which plaintiff is a wholly owned subsidiary, testified that plaintiff has adopted a fair trade policy in every state having a fair trade act, and that over five thousand fair trade contracts identical to that introduced into evidence as plaintiff's exhibit 2 had been executed in Illinois. It was stated that the purpose of these contracts was to protect the trade-marks and good will built up over a period of years by the plaintiff for Seagram products. During the last two or three years plaintiff has in fact spent over $3,000,000 in advertising and promoting their sale in Illinois. In addition, plaintiff has 32 "missionary men," who continuously contact retailers with reference to the plaintiff's products. They operate primarily in the city of Chicago, and are charged with the duty of determining whether the retailers they call on are maintaining plaintiff's fair trade prices. Plaintiff also employs, from time to time, various shopping services to ascertain whether fair trade prices are being maintained.

Both Lind and Teece testified that unless the price cutting of plaintiff's products by the defendants was restrained, plaintiff's business would suffer grave and irreparable harm; that the good will built up over a period of years would be almost lost, the volume of plaintiff's business would be cut by "at least 50 per cent in three months' time;" that when a brand becomes involved in price-cutting "it loses its standing, and when it has lost its standing, it is through."

On June 15, 1954, an advertisement appeared in the Chicago Sun-Times in which all fifty-two defendant liquor stores offered for sale and advertised fifths of Seagram's "VO" and "7 Crown" at $4.89 and $3.49, although the fair trade prices are $5.98 and $4.30 respectively. This advertisement was published by these defendants individually and collectively as the "Foremost Liquor Stores." The defendant liquor stores are entitled to use the name "Foremost Store" as subscribers to the merchandising and promotional services rendered by the defendant "Foremost Promotions, Inc."

Teece testified that over fifty liquor retailers in Chicago called on him the day the advertisement was published. One of the callers was the president of the "Illinois Package Association," a group of Chicago liquor retailers. He wanted to know "immediately" what the plaintiff was going to do with reference to the price cutting and added:

"I have your merchandise on the shelf. If you don't do something about it, I will take it off the shelf."

Teece was also told that other members of this association were of the same opinion. Another complaint registered with Teece was by one of the managers of a chain of Chicago stores. He warned the

plaintiff that if something was not done about the advertisement, they proposed to take action.

Also on the day of publication of defendants' advertisement, plaintiff's Chicago manager responsible for "policing the market" in Cook County reported to Teece that there had been a tremendous number of telephone complaints from retail liquor dealers in Chicago. He said that two supervisors had been called in to help handle these calls, and orders had been cancelled because of the defendants' advertisement.

Six weeks before the publication of defendants' advertisement, plaintiff and the attorneys for defendants had entered into an arrangement in connection with the continuance of a fair trade suit involving two "Foremost Stores." A letter reflecting this arrangement was sent by one of the attorneys for defendants to all of them; it was signed by Irving Robins, their "agent and attorney in fact." This letter, dated April 30, 1954, began as follows:

"As you know, Seagram Distillers Corporation has consistently endeavored to enforce its Fair Trade prices in this area."

The letter then set out the terms of the agreement between the plaintiff and defendants, the substance of which was:

"(1) All Foremost Stores will strictly adhere to the Fair Trade Prices on Seagram products.

"(2) Seagram will make every diligent effort to enforce its Fair Trade prices in the Chicago area."

It was also stated that the Foremost Stores would:

" * * * endeavor to keep Seagram informed of all violations (price cutting by competitors of Foremost Stores) so that they (Seagram) may have an opportunity to carry out their Fair Trade policy."

In closing, the letter said:

"We believe that in view of Seagram's consistent record in this matter, it should first be given a reasonable chance to correct any price cutting situation."

Finally, the letter said that if, after notice of a price cutting situation, Seagram should fail to take "proper action we will notify you (defendant stores) and advise you whether you may legally sell Seagram products below the applicable Fair Trade prices."

On May 24, 1954, one of the attorneys for the defendants sent a letter to one of the attorneys for plaintiff which stated that shopping by defendants' agents of what was later shown to be approximately 94 liquor retailers had revealed 76 violations of plaintiff's fair trade prices. A similar letter was sent to plaintiff on June 17, 1954. This letter was based upon shopping by the same agents of approximately 62 stores and listed 43 violations. At the hearing it was stipulated that the defendants' shoppers would testify that they bought products of the plaintiff as indicated in the letters on May 24 and June 17, 1954, they would have the merchandise with them to prove they made the "buys," and that in most of the stores where they said they made purchases, the prices of the products on the stores' shelves coincided with plaintiff's fair trade prices.

After receipt of these letters, the plaintiff "shopped" each of the stores listed. Whenever such subsequent shopping revealed a second violation, an action was begun. It was plaintiff's practice to require two violations before suit was brought. Where there are two violations, action is begun forthwith. In some actions begun by plaintiff the affidavits supplied by defendant were utilized.

The only witness for the defendants was Irving Robins, president of defendant Foremost Promotions, Inc., and "agent and attorney in fact" for the rest of the defendants. Robins was the person responsible for the advertisement of June 15, 1954. He said it was his "prerogative" and "responsibility" to determine the prices at which the defendant liquor stores would advertise plaintiff's products. Robins also said that the

prices at which the plaintiff's products were advertised were based upon the price levels reported by defendants' shoppers.

Upon consideration of the pleadings and the evidence the court below made extensive findings of fact, among which were the following:

"7. Unless enjoined, defendants intend to continue said conduct complained of, to the irreparable damage of the good will and business of the plaintiff herein and of the producers of said Seagram products, thereby impairing the value of the trademarks, brands and names under which Seagram products are sold.

"8. Such wrongful conduct of defendants if not enjoined will cause others dealing in Seagram products to fail to comply with the aforesaid Fair Trade contracts, will substantially decrease the volume of sales of Seagram products in Illinois, and will substantially impair the good will of the plaintiff and the good will of the trade-marks, brands and names of the producers of Seagram products, all to the great damage and financial loss of the plaintiff.

"10. Plaintiff is and has been vigorous, fair and diligent in the enforcement and maintenance of its Fair Trade prices in Illinois by all appropriate methods, including many legal proceedings.

"11. The evidence does not support defendants' asserted claim of abandonment by plaintiff of its Fair Trade program in Illinois or defendants' claim that plaintiff has unreasonably failed and refused to take appropriate action against retail dealers alleged to have been selling Seagram products at prices below those stipulated by plaintiff in accordance with its Fair Trade contracts.

"12. The irreparable injury to the good will and business of plaintiff which would be suffered by it if defendants are not enjoined from advertising, offering for sale and selling Seagram products at less than the Fair Trade prices stipulated therefor, during the period prior to final adjudication herein, would be substantially greater than any loss or damage which could then be suffered by defendants as the result of the issuance of an injunction.

"13. A preliminary injunction is necessary to preserve the *status quo* now existing until the final determination of the controversy herein."

Among the conclusions of law were the following:

"6. Plaintiff has no adequate remedy at law.

"7. The action and threatened action of the defendants in advertising, offering for sale and selling Seagram products at less than the prices stipulated therefor pursuant to said Fair Trade contracts will result in direct, immediate and irreparable injury to plaintiff, and it is therefore entitled to equitable relief.

"8. There is a reasonable probability that plaintiff will prevail upon the final determination of the controversy herein.

"9. The balance of convenience or injury is resolved in favor of plaintiff and a preliminary injunction is necessary to prevent irreparable injury to it."

It was also ordered that the bond in the amount of $5,000 previously filed by plaintiff pursuant to an earlier temporary restraining order would stand as a penal bond for the payment of damages to any party found to have been wrongfully restrained or enjoined.

■ 1. The findings of fact by the district court are sufficient to embrace all of the material allegations of the amended complaint. Supported by the evidence, they include findings of federal jurisdiction, probability of irreparable damage to plaintiff, and nonabandonment by plaintiff of its price-fixing contracts.

■ 2. While considerable evidence was received by the district court, a final hearing upon the issues did not

take place. The evidence was received so that the court might have an opportunity to exercise its discretion upon the motion for temporary injunction. Its granting of such relief must be affirmed unless there has been an abuse of discretion. Doeskin Products v. United Paper Co., 7 Cir., 195 F.2d 356, 360. We are not permitted to substitute our opinion for the finding of the district court, where, as here, the record furnishes a reasonable basis for its findings and action. The purpose of a preliminary injunction is to preserve the subject matter of the controversy in its then existing condition—to preserve the *status quo*. Doeskin Products v. United Paper Co., supra, 195 F.2d at page 358.

■ 3. The district court should not, on a motion for preliminary injunction, decide as to the constitutionality of a statute. That must be reserved until the final hearing on the merits of the case. The injection of a question as to the alleged unconstitutionality of the Illinois Fair Trade Act by the defendants did not require the district court to pass upon that question in connection with the granting of the preliminary injunction. Neither did the inclusion of that point in the briefs of both parties in this court, give us any right in this appeal from an interlocutory order, to decide that question. As was said in Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774:

"We think the court committed serious error in thus dealing with the case upon motion for temporary injunction. The question before it was not whether the act was constitutional or unconstitutional; was not whether the Commission had complied with the requirements of the act, if valid, but was whether the showing made raised serious questions, under the federal Constitution and the state law, and disclosed that enforcement of the act, pending final hearing, would inflict irreparable damages upon the complainants."

■ We do not believe that the record before us shows that any serious question under the federal constitution exists and that therefore enforcement of the act, pending final hearing would inflict irreparable damages upon the defendants. General Electric Co. v. Masters, Inc., 307 N.Y. 229, 120 N.E.2d 802, appeal dismissed, 1954, 348 U.S. 892, 75 S.Ct. 215.

■ 4. The preliminary injunction order entered by the district court reads, in part, as follows:

"It Is Further Ordered, Adjudged and Decreed that * * * defendants herein, their agents, servants, employees, attorneys, successors and assigns, and each and every one of them be, and they are hereby jointly and severally enjoined and restrained from wilfully and knowingly advertising, offering for sale or selling Seagram products, including but not limited to Seagram's V.O., Seagram's Seven Crown Blended Whiskey and Seagram's Ancient Bottle Gin, in Illinois, at less than the prices stipulated by Seagram-Distillers Corporation from time to time under the Illinois Fair Trade Act and in accordance with contracts made pursuant to said Act, which contracts at the time of the filing of the complaint herein were, now are or may hereafter be in force in Illinois relating to the sale or resale of any of said Seagram products in that state."

Defendants contend that the "acts sought to be restrained" are set forth in the order by reference to an "other document," and therefore the order violates rule 65 (d) of the Federal Rules of Civil Procedure[2], which reads, in part, as follows:

"(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall de-

2. 28 U.S.C.A. Rule 65(d).

scribe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; * * *."

The obvious purpose of this rule was to enable one reading the order for a temporary injunction, or the temporary injunction itself, to know what act or acts were to be restrained, without being thereby referred to a complaint or other document for that information. This order accomplishes that purpose. Its language is flexible enough to accommodate it to the fact that the prices referred to would in all likelihood vary from time to time in an active market. Hence, we hold that the form of the order[3] does not violate rule 65(d).

For the reasons above stated, the order from which defendants appeal is

Affirmed.

3. (which was not objected to in the district court by defendants)