**SEAGRAM–DISTILLERS C O R P O R A-TION, a Delaware corporation, Plaintiff-Appellee,**

v.

**NEW CUT RATE LIQUORS, Inc., et al., Defendants-Appellants.**

No. 11685.

United States Court of Appeals Seventh Circuit.

May 23, 1957.

Rehearing Denied June 24, 1957.

Allen H. Schultz, Louis L. Biro, Robert Karmel, Charles D. Snewind, Chicago, Ill., for defendants-appellants, Schultz, Biro & Karmel, Chicago, Ill., of counsel.

Patrick W. O'Brien, Louis A. Kohn, Frank D. Mayer, James C. Mallatt, Chicago, Ill., for Seagram-Distillers Corp., plaintiff-appellee, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendants appeal from a judgment of the district court, entered December 5, 1955, which permanently enjoined them from offering for sale or selling Seagram products at less than the prices stipulated by plaintiff from time to time under the Illinois Fair Trade Act [1] and in accordance with contracts made pursuant thereto.

Based upon plaintiff's amended complaint, which defendants answered, the district court, after hearing evidence, on July 2, 1954 granted a preliminary injunction, having found that action necessary to preserve the *status quo*. We affirmed. 221 F.2d 815, certiorari denied 350 U.S. 828, 76 S.Ct. 59, 100 L.Ed. 740.

On final hearing of the case, the district court heard additional evidence and, by stipulation, also considered the evidence heard on the motion for preliminary injunction.

The amended complaint alleges that plaintiff is a Delaware corporation and a citizen of that state, and defendants are citizens and residents of the state of Illinois. It expressly alleges that this is a suit between citizens of different states, and the matter in controversy herein, exclusive of interest and costs, exceeds the sum of $3,000.

It further appears therefrom that plaintiff is the sole authorized Illinois distributor of Seagram beverages, which it sells under the trademarks, brands and names of the producers thereof, and that defendants are engaged in the retail liquor business in Illinois. Plaintiff has expended in Illinois over $500,000 in advertising Seagram products, having sold large quantities thereof in that state.

It is also charged that plaintiff executed fair trade contracts, in accordance with the Illinois Fair Trade Act, with large numbers of retailers in Illinois, and announced stipulated retail prices of Seagram products, that notice thereof was given to defendants and that they continued advertising, offering for sale or selling of Seagram products at less than the stipulated prices, to the irreparable damage of the good will and business of the plaintiff, that, unless defendants are enjoined, plaintiff will suffer further irreparable damage in a decrease in its sales and others dealing in said products will fail to comply with its fair trade contracts, all to the great damage and financial loss of plaintiff.

1. Ch. 121½, Illinois Revised Statutes, 1955, Sec. 188 et seq.

Federal jurisdiction was challenged by defendants, both in their answer and by a motion made at the time of the final hearing on the merits. They now argue that plaintiff failed to establish federal jurisdiction in that no competent evidence was introduced to prove that the matter in controversy, exclusive of interest and costs, exceeded the sum of $3,000.

■ 1. Plaintiff in such a case must carry throughout the litigation the burden of showing that it is properly in court. KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. If its allegations of jurisdictional facts are challenged by its adversary in any appropriate manner, it must support them by competent proof. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135.

In an attempt to sustain its burden, plaintiff succeeded in introducing, over the objection of defendants as to its competency, evidence which, plaintiff contends, tended to prove the value of its good will in the Seagram products. Its witness Teece testified that "for the past two or three years, in excess of $3,000,000 was spent by plaintiff in Illinois advertising, as well as promotion, and outdoor signs." Thereon the district court made a finding of fact that the matter in controversy, exclusive of interest and costs, exceeds the sum of $3,000. It thereupon concluded that it had jurisdiction.

In Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, at page 195, 57 S.Ct. 139, at page 145, 81 L.Ed. 109, which upheld the constitutionality of the Illinois Fair Trade Act, the court referred to section 2 of the act, which reads:

"§ 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section 1 of this Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

It said that section 2 "interferes only when he [purchaser of the commodity] sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury". At page 198 of 299 U.S., at page 146 of 57 S.Ct., it added:

"* * * the sole purpose of the present law is to afford a legitimate remedy for an *injury* to the good will which results from the use of trade-marks, brands or names, * *." (Italics supplied.)

The district court did not note that, when the $3,000 requisite for jurisdiction[2] is challenged in an action brought in a federal court for the protection of a right belonging to plaintiff, there is an important distinction between two classes of diversity cases.

■■ In one class (which we shall call class A), a plaintiff charges wrongful acts by a defendant, or by several defendants acting jointly, which have, or will, injure or damage a right for which plaintiff seeks protection. In such a case, if plaintiff shows that the alleged *injury or damage* caused or threatened by a defendant, or by several defendants acting jointly, amounts to at least $3,000, the federal court has jurisdiction.

In the other class of diversity cases (which we shall call class B), a plaintiff charges wrongful acts by a defendant, or by several defendants acting jointly, which, if not prevented, will completely deny or destroy the right for which plaintiff seeks protection. In such a case, if plaintiff shows that the right is worth at least $3,000, the federal court has jurisdiction.

This distinction is made apparent by cases to which we now refer.

*Class A.*

In McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, General Motors sued in a fed-

2. 28 U.S.C.A. § 1332.

eral district court to restrain the enforcement of an Indiana act providing for the regulation of the business of purchasing contracts arising out of retail installment sales, on the ground that the act was invalid. Although the complaint, to show federal jurisdiction, set forth the net worth of General Motors' business in Indiana covered by the act and other facts tending to prove the value of its right to carry on that business in that state, the court, 298 U.S. at page 181, 56 S.Ct. at page 781, said:

"Respondent [General Motors] invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference. * * * But in the instant case, the statute does not attempt to prevent respondent from conducting its business. There is no showing that it cannot obtain a license and proceed with its operations. The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. The particular allegations of respondent's bill as to the extent or value of its business throw no light upon that subject. They fail to set forth any facts showing what, if any, curtailment of business and consequent loss the enforcement of the statute would involve. The bill is thus destitute of any appropriate allegation as to jurisdictional amount save the general allegation that the matter in controversy exceeds $3,-000. That allegation was put in issue and the record discloses neither finding nor evidence to sustain it."

In KVOS, Inc., v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183, Associated Press sued in a federal district court to enjoin the proprietor of a radio station from pirating news gathered by Associated Press for use of its members. The district court, 9 F.Supp. 279, held that the jurisdictional requirement now under consideration had not been met, and dismissed the suit. The Court of Appeals disagreed, 9 Cir., 80 F. 2d 575, and held that Associated Press had shown the requisite fact of jurisdiction. The Supreme Court reversed the Court of Appeals, pointing out, 299 U.S. at page 278, 57 S.Ct. at page 201, that the only attempt by Associated Press to show jurisdiction by competent proof was an affidavit to the effect that payments made by newspaper members for news sold to them by Associated Press were upwards of $8,000 per month, "* * * 'which is being imperilled and jeopardized by the acts of defendant * * * and said sum greatly exceeds the sum of Three Thousand Dollars, exclusive of interest and costs, and complainant is in danger of losing said memberships and payments if defendant's practices in respect to pirating said news is not enjoined.' " The Supreme Court, 299 U.S. at page 279, 57 S.Ct. at page 201, in rejecting this attempt to show jurisdiction, said "no intimation is given of the character or extent of the damage they [the members] would suffer by such withdrawal. The respondent having failed to support the allegations as to amount in controversy the District Court should have dismissed the bill."

*Class B.*

In Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111, a class suit was filed by and on behalf of the members of a society against the Florida attorney general and others charged with the enforcement of a state act directed at organizations like the society. The complaint charged that the act was unconstitutional and deprived complainants of rights without due process of law and without equal protection of the laws, etc. By a motion to dismiss, the defendants urged that the complaint affirmatively showed that the jurisdictional amount of $3,000 was not involved. The court, **307**

U.S. at page 74, 59 S.Ct. at page 730, said:

> "The essential matter in controversy here is the right of the members, in association through the Society, to conduct the business of licensing the public performance for profit of their copyrights. This method of combining for contracts is *interdicted* by the Florida statute. It is not a question of taxation or regulation but *prohibition*.* Under such circumstances, the issue on jurisdiction is the value of this *right* to conduct the business free of the *prohibition* of the statute. * * * "
> (Italics supplied.)

After pointing out the facts in the complaint relating to the value of this right, the court, 307 U.S. at page 75, 59 S.Ct. at page 730, said:

> " * * * From these facts, the finding of the District Court that the matter in controversy—the value of the aggregate *rights* of all members to conduct their business through the Society—exceeds $3,000 in value is fully supported." (Italics supplied.)

The court pointed out that the test was different in the McNutt and Associated Press cases, supra, stating, 307 U.S. at page 75, 59 S.Ct. at page 730:

> "McNutt v. General Motors Acceptance Corp., differs. There the State of Indiana had passed an act regulating, not prohibiting, the business of the Acceptance Corporation. The right for which protection was sought was the right to be free of regulation. It was to be measured by the loss, if any, following enforcement of regulation. This was not alleged or proved. In KVOS, Inc., v. Associated Press, relief was sought to enjoin alleged pirating, by radio, of news furnished by the Associated Press to its members. The right for which protection was sought was 'the right to conduct those enterprises free of' interference. On the issue of the value of this right, it was deposed only that the Associated Press received more than $8,000 per month for news in the territory served by the broadcasting station and was in danger of losing the payments. The Associated Press was a nonprofit corporation, operated without the purpose of profiting from its services to members and equitably dividing the expenses among them. The damage in the Associated Press case was to its members and this was not shown. Neither was it alleged or proved that any member threatened to withdraw or to reduce its payments."

In Brotherhood of Locomotive Firemen & Enginemen v. Pinkston, 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219, a widow, for the purpose of protecting her right to future participation in a fund from which she was entitled to receive a pension in monthly payments during her lifetime as long as she remained unmarried, brought a suit in a federal district court which dismissed the suit on the ground that the requisite amount of $3,000 was not involved. The Supreme Court, 293 U.S. at page 99, 55 S.Ct. at page 1, treated the value of the widow's interest in the fund as the test of jurisdiction. It pointed out that her life expectancy was shown to bring the value of the future pension installments to a sum in excess of $3,000 despite the contingency of her remarriage. The court held that federal jurisdiction existed.

In Berryman v. Board of Trustees of Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L.Ed. 225, a college sued in a federal circuit court to enjoin the collection of taxes on its property on the ground that a perpetual contract of exemption from taxation involved the amount essential to sustain federal jurisdiction, where the contract right exceeded in value that amount, although the current taxes assessed and levied were less than that sum. The defendants challenged jurisdiction. The Supreme Court held that the lower court had jurisdiction because the value of the thing at issue,

the contract right, exceeded in value the then jurisdictional requirement of $2,-000. It pointed out that the claimed exemption covered, not only a current tax of $946.32, but extended to all future taxes.

In the record before us there is no evidence that the monetary value of the damage or injury to plaintiff's good will, sustained or threatened by defendants' acts, exceeds $3,000. It appears that its witness Lind was about to furnish evidence which might have been relevant on that point. He was general counsel for plaintiff and he was permitted, over objection, to testify that in a price war in the liquor market "our product is subject to loss, and our business has been injured, *because we can measure it,* because we can see what happens to us in every jurisdiction where there is a price break." (Italics supplied.) The measure to which he referred was not otherwise identified or produced in court. Whether the measure was accurate we do not know. Lind's reference to it indicates that he, a lawyer and business man acquainted with plaintiff's affairs, recognized that the injury claimed to result to plaintiff's business in a price break was susceptible of pecuniary measurement which could be adduced in an effort to prove jurisdiction. On that issue competent evidence of the character and extent of the damage to good will would have been relevant.

Defendants' acts did not prevent plaintiff from using its good will in the conduct of its business. The damage to plaintiff's good will caused or threatened by defendants' acts is the subject of controversy in this case. Plaintiff has failed to prove any facts showing what, if any, curtailment of business and consequent loss have been or are likely to result from defendants' acts. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181, 56 S.Ct. 780, 80 L.Ed. 1135.

█ It is improper, in the absence of evidence of the amount of damage sustained or threatened, to look at the evidence of what was spent in building good will and then, if the amount be substantial, to surmise that the amount of the loss is $3,000 or more. Yet this is, in effect, the method by which the district court, in stating its theory of this action, reached the conclusion that it had jurisdiction.[3] A similar method of reasoning was disapproved by the Supreme Court in KVOS, Inc., v. Associated Press, 299 U.S. 269, at page 276, 57 S.Ct. 197, at page 200, 81 L.Ed. 183:

" * * * Dealing with the petitioner's insistence that the amount in controversy was not shown to exceed three thousand dollars the court [Court of Appeals] held * * * that 'The several millions of dollars here alleged to be invested in the Association's business * * * may well be damaged to the extent of $3,-000 by the pirating practices described.' After referring to the character and scope of the respondent's activities the court states: 'It is obvious that the business of gathering and distributing to members, *before* profitable publication, *could conceivably be damaged* to the extent of $3,000 by the misappropriation and premature publication of the news material. To hold otherwise would warrant the inference that no corporation could be damaged by a wrongful attack on its business, when that business happened to be run at no profit or at a loss. Also, we are unable to hold irrational the claim that the piracy caused a $3,000 damage to the Association's quasi

---

**3.** The following colloquy occurred:

"The Court: The theory of this action—I am not deciding the motion, but in this practice of the defendant here, as alleged in the complaint, a loss will result, and a loss probably has resulted because of the advertisement, and because of the cut in prices, that is substantially the position of the plaintiff, is it?

"Mr. Kohn [plaintiff's attorney] Yes.

"Mr. Schultz [defendants' attorney] This Court has no jurisdiction unless they can prove damage of $3,000 or more."

property right in the news.'" (Italics supplied except word "before".) and in 299 U.S. at page 277, 57 S.Ct. at page 200:

"* * * The complaint contains nothing to the purpose save the general statement that the damage to which the respondent is being subjected is in excess of three thousand dollars and the amount involved is in excess of that sum. * * * But where the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner, the plaintiff must support them by competent proof. * * * "

and in 299 U.S. at page 279, 57 S.Ct. at page 201:

"* * * the allegation of possible damage * * * is wholly inadequate, because * * * no intimation is given of the character or extent of the damage * * *. The respondent having failed to support the allegations as to amount in controversy the District Court should have dismissed the bill."

It is apparent that the district court erred in holding that the matter in controversy herein exceeds the sum of $3,000. The district court had no jurisdiction of this case. Illinois courts are open to plaintiff.

■ 2. On the record before us, we are not concerned with the principle of *res judicata*. Neither in this court nor in the district court did plaintiff urge that that principle applied to the district court's finding in favor of its jurisdiction, as contained in its order for the issuance of a preliminary injunction.

In Murrell v. Stock Growers' Nat. Bank of Cheyenne, 10 Cir., 74 F.2d 827, at page 832, the court said:

"A party may waive his right to assert the conclusiveness or bar of a

judgment under the doctrine of res judicata."

To the same effect, see 50 C.J.S. Judgments §§ 597, 822, pp. 15 and 389.

Not only was the rule of res judicata not relied on by plaintiff in the district court, but that court proceeded to determine anew that it had jurisdiction, when it conducted the hearing which culminated in the judgment from which the present appeal was taken. Several circumstances make this clear. It was stipulated by counsel that all the testimony taken on the hearing for a preliminary injunction should be used on the final hearing of the case. This included testimony of Lind and Teece, which in large part was offered to establish jurisdiction. The remarks of the district judge indicate that he felt that his ruling on jurisdiction at the preliminary hearing was correct and that he was ruling the same way upon the final hearing. He thereupon made a finding of fact that the matter in controversy herein, exclusive of interest and costs, exceeds the sum of $3,000 and he entered a conclusion of law that the court had jurisdiction of the subject matter of the action.

In plaintiff's brief it is frankly stated:

"Upon defendants' appeal from the preliminary injunction entered in this cause, this Court held that the District Court's finding of fact that federal jurisdiction existed was supported by the evidence (221 F.2d 815, 819). *After the trial on the merits the same finding was made upon the same evidence. * * * *"* (Italics supplied.)

These circumstances show that no one contended in the final hearing that the court's order for a preliminary injunction barred it from making, not that it did not make, an independent adjudication on the matter of jurisdiction at the time of the final hearing.[4] We, there-

4. On the prior appeal, 221 F.2d 815, 819, we said:

"While considerable evidence was received by the district court, a final hearing upon the issues did not take place.

The evidence was received so that the court might have an opportunity to exercise its discretion upon the motion for temporary injunction. * * * "

fore, have a right on this appeal to review the correctness of the latter decision.

For the reasons hereinabove set forth the judgment of the district court is reversed.

Judgment reversed.

FINNEGAN, Circuit Judge (dissenting).

Actually this is an action by Seagram Distillers Corp. to enjoin the multiple defendants from advertising, offering for sale or selling Seagram products at less than the prices stipulated from time to time in accordance with the Fair Trade contracts entered into by Seagram-Distillers Corporation in the State of Illinois. A preliminary injunction was granted below and we affirmed that restraining order. 221 F.2d 815. After our remand the parties stipulated in the district court:

> "Plaintiff is, and at all times mentioned in the complaint has been engaged throughout the United States and Illinois, in the business of dealing in, selling and distributing alcoholic beverages of standard quality produced by Joseph E. Seagram & Sons, Ltd., Joseph E. Seagram & Sons, Inc., and corporations affiliated with said corporations. Said beverages (sometimes hereinafter referred to as 'Seagram products') include Seagram's V. O., Seagram's Seven Crown Blended Whiskey and Seagram Ancient Bottle Gin, and are sold in various sized bottles, the labels or containers of which bear the trade-marks, brands or names of Joseph E. Seagram & Sons, Ltd., Joseph E. Seagram & Sons, Inc., or of corporations affiliated with said corporation, which are the producers thereof. Each of the beverages is, and during all of the times mentioned in the complaint was, in free, fair and open competition with commodities of the same general class, produced by others, and sold and distributed throughout Illinois. Plaintiff herein has for several years pri-

or to the dates mentioned in the complaint expended large sums of money in advertising Seagram products and during the past several years plaintiff expended for such purpose an amount in excess of Five Hundred Thousand Dollars ($500,-000.00) in Illinois alone, and the trade-marks, brands or names under which Seagram products are sold have become widely and favorably known to the trade and public generally in Illinois and plaintiff has sold large quantities of each of said products in Chicago and throughout Illinois.

> "Plaintiff is and continuously, since long prior to the dates mentioned in the complaint, has been the sole person authorized by the producers of Seagram products to sell and distribute said products in Illinois, and has during all of said time made sales of said products to various wholesale distributors throughout Illinois.

> "Plaintiff has executed so-called Fair Trade contracts with large numbers of retailers of alcoholic beverages in Illinois. A copy of the form of said executed contracts is attached hereto as Exhibit A."

That, in my judgment, is not merely an ineffectual stipulation to confer jurisdiction on the district court, but rather a stipulation of the matter in controversy. Plaintiff's vice-president, Teece, in charge of Central Division of Seagram-Distillers Corporation testified in substance during the preliminary injunction hearings that his company spent in excess of $300,000 for advertising promotion and outdoor signs in Illinois, all in connection with Seagram products. Use of that first record was authorized by order of this court based on the parties' agreement.

Plaintiff brought this action to protect good will manifested under paragraph 3 of the stipulation, quoted above. But I refrain, for the purposes of this dissent from reaching other points raised by defendant's appeal which incidently are

far more serious than the short treatment accorded them by the majority.

Under 28 U.S.C.A. § 1332 "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between: (1) Citizens of different States * * *" "By matter in dispute," Mr. Justice Field wrote in Smith v. Adams, 1889, 130 U.S. 167, 175, 9 S.Ct. 566, 569, 32 L.Ed. 895, "is meant the subject of litigation—the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. It is conceded that the pecuniary value of the matter in dispute may be determined, not only by the money judgment prayed, where such is the case, but in some cases by the increased or diminished value of the property directly affected by the relief prayed * * *." Starting with Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 1915, 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174, there is a line of decisions in various federal courts, permitting "the jurisdictional amount is to be calculated on the basis of the property right which is being injured." John B. Kelly, Inc., v. Lehigh Nav. Coal Co., 8 Cir., 1945, 151 F.2d 743, 746; First English Lutheran Church of Oklahoma City v. Evangelical Lutheran Synod, 10 Cir., 1953, 135 F.2d 701; Purcell v. Summers, 4 Cir., 1942, 126 F.2d 390. And several of the district judges in our own circuit have thought that in Fair Trade cases the jurisdictional amount is measured by the value of the right to be protected. See, e. g., Calvert Distillers Corp. v. Rosen, D.C.Ill.1953, 115 F.Supp. 146.

McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135, rests upon an attack directed at a regulatory statute. There General Motors sought to restrain enforcement of an Indiana Act regulating the business of purchasing contracts arising out of retail installment sales. In the case before us we are not dealing with state taxation or its regulatory authority but with an alleged invasion by the defendants of a right asserted by plaintiff. If the plaintiff's alleged right fails because of some defect in the Illinois Fair Trade Act that is something else and should be faced. But to stop short and reverse this case on the mechanical basis of a tenuous determination of the jurisdictional dollar sign is an approach I refuse to pursue.