DART DRUG CORPORATION OF MARYLAND
*v.* ELI LILLY AND COMPANY

[No. 160, September Term, 1957.]

22

*Decided March 3, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harry Silbert,* with whom was *J. E. Bindeman* on the brief, for the appellant.

*Jesse Slingluff, Jr.,* with whom was *Francis X. Gallagher* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree passed on July 3, 1957, permanently enjoining Dart Drug Corporation of Maryland, operating a drugstore in Silver Spring, Montgomery County, Maryland, (Dart), from selling products manufactured by Eli Lilly and Company, an Indiana corporation, (Lilly), at less than the minimum resale prices established under con-

tracts entered into with other retail druggists in accordance with the Maryland Fair Trade Act, Code (1951), Art. 83, sec. 102, *et seq.*

In its answer to the bill of complaint Dart did not deny that it had consistently sold such products at far less than the minimum prices since it began business in 1956, in what might be fairly described as aggressive price cutting. It defended on the ground that Lilly had failed to make reasonably diligent efforts to enforce its Fair Trade contracts in Maryland, had acquiesced in the notorious, open and continued disregard of its price lists by other retailers in Maryland, through the use of trading stamps, and had thus virtually abandoned its pricing program. This, of course, raised an issue of fact, or at least a mixed question of law and fact. It is conceded that a failure to use reasonable diligence to enforce compliance by others may call for or require a denial of injunctive relief by a court of equity. Sometimes it is said to be an application of the maxim of clean hands, or that one who seeks equity must do equity, or that equality is equity. It is sometimes said that the Act requires by implication that the prices fixed shall be uniform in any competitive area, and that unjust discrimination is the antithesis of fair trade. Whatever its true source, the general rule is well established, and is clearly set forth in the cases of *Hutzler Bros. v. Remington Putnam*, 186 Md. 210, 215, and *General Electric Company v. Home Utilities Company*, 131 F. Supp. 838, aff. 227 F. 2d 384 (C. A. 4th). The difficulty lies in determining what is reasonable diligence under the circumstances of a particular case.

Lilly is a large manufacturer of patented drugs which are sold nationwide. Generally speaking, it sells to distributors who in turn sell to retail outlets of which there are more than 1,000 located throughout the State of Maryland, although it has direct contracts with only about 15, executed in 1952. Under the Act, non-signers are bound by these contracts, and recurrent doubts as to the constitutionality of the provision, raised by the decision of *Schwegmann Bros. v. Calvert Corp.*, 341 U. S. 384, have been allayed. *Home Utilities Co. v. Revere*, 209 Md. 610 (1956). Cf. *Schweg-*

*mann Bros. Giant Super Mkts. v. Eli Lilly & Co.*, 205 F. 2d 788, *cert.* den. 346 U. S. 856. It was shown that Lilly relies largely, in its enforcement program, upon complaints received from local druggists in active competition with an alleged violator, and complaints received from several active druggists' associations. It also instructs its salesmen, of whom there are 18 in the State, to report violations observed. Upon receiving a complaint, it was shown that the practice was to have the district manager or a salesman investigate and talk to the offender. If this is not successful, the manager of the legal department sends a registered letter of warning. If necessary, this is followed by the institution of suit. Without reviewing the testimony in detail, it is sufficient to say that it supports the Chancellor's findings that a considerable number of complaints were received and investigated, and a number of violators did in fact desist, either as a result of persuasion, the threat of suit, or as a result of the institution of suit, and that the enforcement program was reasonably designed to effectuate its purpose.

The appellant places its chief reliance upon the testimony of a detective, Mr. McLellan, who, at its request, visited certain stores in the State of Maryland selected from a list, supplied by a representative of the S. & H. Trading Stamp Company, of 56 drugstores which were said to have contracts with that company in regard to trading stamps. Mr. McLellan testified that in June, 1957, a few days prior to the trial of the case below, he and his assistant shopped 36 of these stores. In 14 of them he learned that they did not sell drugs, or had discontinued the use of stamps, or did not use them in the sale of drugs. In 13 stores purchases of drugs were made at list prices, but with trading stamps given. In 9 stores no purchases were made, but stamps were offered in connection with a proposed purchase. None of these stores were in Montgomery or Prince George's Counties. Seven were in Baltimore City, 6 on the Eastern Shore, and the rest on the Western Shore, ranging from Ellicott City to Cumberland. He testified that placards were displayed in these stores stating that trading stamps were given. Upon objection by the appellee's counsel, he was not permitted to

testify as to statements made to him by the various sellers as to how long they had been giving stamps.

The appellant printed in its appendix, following a summary, not in narrative form, of Mr. McLellan's testimony, a list of the 22 stores he found to be advertising the giving of stamps, or offering them in connection with purchases or proposed purchases. In this list the length of time each store had been giving trading stamps was stated. On motion of the appellee, we ordered this list deleted, on the ground that it was not supported by the testimony. The appellant has filed a motion to rescind our order, and we think it must be granted. It is now shown that counsel for the appellee agreed that the list made by the witness could be put in evidence, without conceding the correctness of the facts stated, and he later stipulated as to the length of time that each store in question had been using stamps. It is also shown that he wrote counsel for the appellant, agreeing to a summarization of the testimony of the witness. Although the appellee prints in its appendix the full testimony of Mr. McLellan, the summary seems to be substantially correct, and the stipulation as to the length of time is conceded. We cannot accept the argument that the printing of the list was misleading or improper under the circumstances, and we regard the appellee's appendix as redundant.

Of the 22 stores listed, it appears that 11 had been giving stamps for two years or less, 6 stores for periods of from four to ten years, and 4 stores for from twelve to thirty-five years. We do not regard the length of time as particularly significant. Doubts as to the enforceability of Fair Trade contracts against non-signers have persisted until a quite recent date. Questions have also been raised and courts have disagreed as to whether the giving of trading stamps is a violation of Fair Trade contracts, although the parties now concede that it is. Their widespread use is a comparatively recent development. See Note 66 Yale L. Journal 436, 439, and Note 22 A. L. R. 2d 1212. In any event, the officers of the appellee charged with enforcement testified that every complaint received had been followed up, that they had no knowledge of the 22 violations shown, and that immediate

26

steps would be taken to correct the situation. Cf. *Colgate-Palmolive Company v. Max Dichter & Sons,* 142 F. Supp. 545 (Mass. D. C.). No current violations were shown in the immediate competitive area where Dart operates. In fact, it was shown that in that area enforcement had been completely effective, with the exception of Dart, and perhaps one other store against which a suit is pending. If we assume, without deciding, that the rule of reasonable diligence applies to the whole State, a showing of violations in 2.2 per cent of the retail outlets does not seem to be excessive, and the fact that in more than 32 cases enforcement has been effective, as of the date of trial, would seem to negative any inference of acquiescence or abandonment. The most that can be said is that a more aggressive investigation, without waiting for complaints, might have produced better results. In *General Electric Company v. Home Utilities Company, supra,* it was shown that there were 69 violators out of 1,000 stores, of which only 50% had been warned. Cf. *Lionel Corporation v. Klein,* 114 A. 2d 652 (Del. Ch.). We agree with the Chancellor that reasonable diligence was shown.

> *Decree affirmed, costs to be paid by appellant, with the exception of the cost of the appellee's appendix, to be paid by the appellee.*