## BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN ET AL. *v.* PINKSTON.

No. 32.   Argued October 16, 17, 1934.—Decided November 5, 1934.

*Mr. Thomas Stevenson* for petitioners.

*Mr. W. L. Bryan,* with whom *Mr. James R. Garfield* was on the brief, for respondent.

Opinion of the Court by MR. JUSTICE SUTHERLAND, announced by the CHIEF JUSTICE.

The Brotherhood of Locomotive Firemen and Enginemen is an unincorporated voluntary association with headquarters in Ohio. It has a department known as the Widows' Pension Department, created in order to provide a monthly income for the widows or widowed mothers of deceased members. The widow of a member, upon his death, is to receive a pension of $35 per month during her lifetime. In the event of her remarriage, the

pension is to cease. The respondent, widow of a deceased member, became entitled to this pension. Thereafter, the association, following an investigation of the financial condition of the department and upon an actuarial report, determined to abolish the department and distribute the assets after making a lump-sum settlement not to exceed $1,500 with each widow then on the pension roll. Widows refusing to settle were to have their names erased from the roll, and be provisionally relegated to another fund. Payment of monthly instalments on pensions was discontinued, beginning September 1st, 1931.

Complainant thereupon brought suit in a federal district court, on behalf of herself and other beneficiaries similarly situated, for an accounting, determination of priorities, and a proper liquidation and administration of the funds of the department. The federal jurisdiction was invoked on the ground of diversity of citizenship. The district court, after a hearing, dismissed the bill on the ground that the requisite amount to confer jurisdiction (over $3,000) was not involved. The court of appeals reversed, 69 F. (2d) 600, upon the authority of *Thompson* v. *Thompson*, 226 U. S. 551. Whether that court rightly held that the jurisdictional amount was involved is the only question for consideration.

The entire fund is nearly $300,000. The bill proceeds on the theory that this constitutes a trust fund, and seeks its administration under judicial orders. Respondent urges that the jurisdiction may well be tested by the value of the whole fund. But we put that question aside, since we are of opinion that the value of respondent's own interest in the fund exceeds the jurisdictional amount.

This, it will be seen, is not an action at law to recover overdue instalments, but a suit in equity to preserve and protect a right to future participation in the fund. If

the value of that right exceeds $3,000, the district court has jurisdiction.

In the *Thompson* case, a decree had been entered by the Supreme Court of the District of Columbia in favor of a wife against her husband, for support and maintenance at the rate of $75 a month, together with $500 for counsel fees. The decree was reversed by the Court of Appeals of the District. On an appeal to this court, our jurisdiction was challenged upon the ground that a sum in excess of $5,000 was not involved, as the statute at that time required. While the instalments already accrued amounted to much less than that, it was held that the expectancy of life of the parties was clearly sufficient to make up the balance, and jurisdiction was upheld. Mr. Justice Pitney, who delivered the opinion, said (p. 560)—" The future payments are not in any proper sense contingent or speculative, although they are subject to be increased, decreased or even cut off, as just indicated."

The situation there and that here fairly cannot be distinguished. The life expectancy of respondent, as shown by the mortality tables, is enough to bring the value of the future pension instalments, as of the date of the suit, to a sum much in excess of $3,000; and as to that no point is made. The jurisdictional defect said to exist is that the payments are to cease in the event of respondent's remarriage; and this condition, petitioners say, makes future payments depend entirely upon the volition of the widow, and whether they may accrue is, therefore, a matter of pure speculation. Indeed, the happening of the event does not depend (if that would matter) upon the widow's volition alone, but equally upon the willingness of another to marry her. Continuance of payments during the life of the respondent is fixed by contract quite as definitely as continuance of payments for maintenance in the *Thompson* case was fixed by decree, and subject to substantially like conditions subsequent. In the *Thomp-*

*son* case the payments were subject to be cut off entirely, not only by death but, the court said, " in the event of a change in the circumstances of the parties." The same is true here. In no respect are we able to see any difference in principle between the two cases. The occurrence of the specified event which would put an end to the obligation is no more uncertain in the one case than in the other.

Moreover, the evidence discloses that the expectancy of remarriage and its effect upon the value of the pension are capable of actuarial determination. The law of averages applies in respect of that event, as it does in respect of death and of other events. Mr. Pipe, an actuary called as a witness by petitioners, testified that the value of respondent's right to receive $35 a month so long as she remained unmarried was, in round figures, $6,000 as of August 1, 1931. A report made to the Brotherhood, filed June 2, 1932, by its Committee on Constitution, which seems to have been made after careful study, contains the statement:

" The ' present value ' can be determined if we know the average ages of widows corresponding to the ages at the death of members, and we know·the proportion of widows who remarry. This information is available from the records of Pension Funds. For example, if we know that the average age of the widows of members who die at age 40, is 36, then the value of the benefit in event of death at 40, is the present value of a pension of $420 per annum on the life of a woman aged 36, taking into account the chances of remarriage. The benefit has a definite ' lump sum ' value on the death of the member, . . ."

Counsel upon both sides have cited and discussed decisions of this and other courts bearing upon the general subject. We have examined these decisions, but find it unnecessary to review or distinguish them. We agree with the court below that the question of jurisdiction here

under consideration is the same in substance as that involved in the *Thompson* case; and, that being so, the decree of the court below must be

*Affirmed.*