620

DERMODY v. SMITH et al.
Civ. No. 510.

United States District Court
N. D. Indiana, Fort Wayne Division.
Nov. 23, 1949.

---◆---

Oliver A. Switzer, South Bend, Indiana, Attorney for Plaintiff.

Sol Rothberg and Thomas Gallmeyer, Fort Wayne, Indiana, Attorneys for Defendants.

SWYGERT, District Judge.

In arriving at a decision in this case the jurisdictional questions raised by the defendants must be treated and disposed of first. If the court does not have jurisdiction, the action must be dismissed without reaching the merits as to whether a permanent injunction should replace the temporary restraining order which was issued on November 15, 1949.

The defendants attack on jurisdiction is based on three grounds. Their contentions are (1) that the requisite jurisdictional amount is not present in this controversy, (2) that the plaintiff has not established diversity of citizenship between the plaintiff and the defendants and (3) that the principles of comity require this court to dismiss the action or hold it in abeyance until a prior state court action that may involve the same parties and the identical subject matter is concluded.

The jurisdicion of federal courts in diversity cases depends upon whether the amount in controversy exceeds $3,000, exclusive of interest and costs. In McNutt v. General Motors Acceptance Corporation, 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, the Supreme Court dealt with this jurisdictional requirement. There the court said: "He (the plaintiff) must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."

■ No clearer statement can be found of the necessity for a federal court to make a positive finding that the requisite amount is involved in the controversy before assuming jurisdiction in diversity cases.

■ Where the invasion of a right is sought to be prevented by injunction the value of the challenged right determines the amount in controversy, Dewar v. Brooks, D.C.Nev.1936, 16 F.Supp. 636.

The theory of the plaintiff's complaint is that he and the other members of the United Electrical, Radio and Machine Workers of America (UE) for whom he brings the action have the right to prevent an election within a local union through the use of its facilities and property which may result in the secession of the local union, and which secession, if successful, will bring injury and harm to the UE and its members.

■ The plaintiff places reliance upon two methods of reckoning the value of this asserted right. First, he contends that if the local union is permitted to secede, the national union and its members in other locals will suffer a substantial loss by a

break in the heretofore united bargaining front of the industrial employees working in the General Electric Company's plants throughout the country. The plaintiff's evidence relating to this contention shows that the UE bargains in behalf of its members with the General Electric Company on an industry-wide basis and that there are approximately twenty-eight local unions chartered by the UE in the various General Electric plants. But there is no evidence whatever of the amount of pecuniary loss in bargaining power which may be suffered by the plaintiff and other members of the UE if Local 901 secedes to a rival labor organization.

Because of this lack of evidence, the court would need to resort to speculation and conjecture in determining whether the requisite jurisdictional amount is involved. This cannot be done. "Jurisdiction is based on actuality, not prophecy, the pressure of a grievance immediately felt and presently measurable in money of the jurisdictional amount. Speculative anticipation that conditions, from which present ills, not now sufficient in amount to give jurisdiction, flow, may in time aggregate the necessary amount, will not support jurisdiction." Vicksburg, S. & P. R. Co. v. Nattin, 5 Cir., 1932, 58 F.2d 979, 980.

As a second method of evaluation, the plaintiff attempts to base his injury upon the loss of future per capita payments to the UE by Local 901.

Article 4 of the UE constitution provides that persons whose normal occupation is in the Electrical, Radio and Machine Industry are eligible for membership in the UE. Article 18, Section D, reads: "The monthly dues shall be a minimum of One Dollar and Fifty cents ($1.50) unless otherwise authorized by the General Executive Board"; Article 14, Section A, provides for the chartering of local unions by the General Executive Board of the UE. The provision for per capita payments to the UE is contained in Article 15, Section A of the UE Constitution. That section reads in part: "The revenue of the United Electrical, Radio and Machine Workers of America (UE) shall be derived by the payment of monthly per capita of Fifty (.50) cents for each full month's dues *collected* each month." (Emphasis supplied).

Basing his calculations upon the present membership of the local as being somewhere in excess of 4,000, the plaintiff reaons that secession of the local would cause loss of over $3,000 in revenue to the UE within a short period of time. Thus the plaintiff attempts an evaluation of the right sought to be protected by setting up the pecuniary value of an injury which he avers will result if the court does not protect this alleged right. That such is a proper method of calculating the amount in controversy in suits for injunction in the Federal District Courts is supported by the weight of authority. In Local No. 7 of Bricklayers', etc., Union of America v. Bowen, D.C.Tex.1922, 278 F. 271, 273, the court said: "Further, it is the settled rule that the amount in controversy in injunction suits is not the sum which the plaintiff might recover in a suit for the damage already sustained, but the amount or value of the right which the complainant seeks to protect from invasion, or of the object to be gained by the bill." See also First English Lutheran Church, etc., et al. v. Evangelical Lutheran Synod, etc., 10 Cir.1943, 135 F.2d 701; Dewar v. Brooks, supra.

On the other hand the alleged injury which the plaintiff claims will result from the threatened invasion of his right must neither be collateral to the violation of his right nor be contingent or speculative. In other words, it must be directly and definitely attributable to the threatened invasion of the right asserted by the plaintiff. And where the loss of future payments is alleged as the basis for the amount in controversy there must be either a present property right in those future payments or there must exist no conditions precedent to their payment or to their maturity as legal obligations which would cause them to be considered as contingent or speculative. Healy v. Ratta, 1934, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; Vicksburg S. & P. R. Co. v. Nattin, supra; First English Lutheran Church, etc. v.

Evangelical Lutheran Synod, etc., supra; American Distilling Co. v. City of Sausalito, D.C.N.D.Cal.1947, 73 F.Supp. 520; Cf. Brotherhood of Locomotive Firemen & Enginemen v. Pinkston, 1934, 293 U.S. 96, 55 S.Ct. 1, 79 L.Ed. 219.

In the instant case, the plaintiff has not alleged or proved that there are any unpaid per capita assessments due the UE. The evidence on this subject relates solely to future per capita dues which may be collected from Local 901. These future per capita assessments are payable to the UE only upon the conditions (1) that the members of Local 901 retain their membership in the UE and (2) that they continue to pay their monthly dues.

With regard to the first of these conditions it should be noted that the UE has no legal right to compel the present members of Local 901 to remain as members of the UE, even though an injunction against the projected vote on secession were decreed. As individuals they may voluntarily cease to be members of the UE even if it were determined that the local union could not legally secede as a body from the UE. In other words, they may withdraw individually from the UE without violating any legal right of the UE or its other members including the plaintiff, or without incurring any legal obligation to them. In the light of these circumstances the first of these conditions makes the status of the future payment of per capita dues highly contingent. The second condition relating to payment only after collection of the monthly membership dues serves to augment this contingency.

■ Consequently, the Court cannot find that, in the event there is an affirmative vote for secession if the projected election were conducted, the UE and its members would suffer a definite and directly resulting injury by way of loss of future per capita dues exceeding $3000 from Local 901. The future receipt by the UE of per capita payments from Local 901, even with the aid of an injunction proscribing a vote on secession, is too conjectural to be considered as the basis for reckoning the value of the plaintiff's alleged right for which he seeks protection. In other words, to assume that these per capita payments would be lost or retained as the result of the election on secession is "to indulge in speculation and prophecy." Vicksburg S. & P. R. Co. v. Nattin, supra [58 F.2d 980].

Having thus concluded that the plaintiff has not established that the requisite jurisdictional amount is in controversy, it is not deemed necessary to treat the other grounds for dismissal advanced by the defendants. And since the action must be dismissed on jurisdictional grounds, the merits of the plaintiff's claim for a permanent injunction are not reached or decided.

The temporary restraining order is dissolved and the complaint is dismissed. The Clerk is directed to enter an order to that effect.