### BOYD v. R. P. FARNSWORTH & CO.
#### Civ. A. 3220.

United States District Court
E. D. Louisiana,
New Orleans Division.
May 13, 1952.

Wagner & Jarreau and J. Stanley Wagner, all of New Orleans, La., for plaintiff.

Deutsch, Kerrigan & Stiles and Marian Mayer, all of New Orleans, La., for defendant.

WRIGHT, District Judge.

This is a suit for workman's compensation based on the Louisiana Workmen's Compensation Statute, LSA-R.S. 23:1021 et seq. The only issue presented for adjudication is whether or not the plaintiff should be required to undergo a surgical operation. After consideration of the testimony and the briefs filed by both sides, the court makes the following findings of fact and conclusions of law:

### Findings of Fact

1. On March 15, 1951 plaintiff suffered a crushing injury to his left foot when the caterpillar tread supporting a heavy crane ran over that foot. At the time plaintiff was employed by defendant as an engineer's rodman doing general laboring work at $50 per week.

2. From the date of the accident to July 27, 1951 plaintiff received hospital and medical care from the defendant through its insurer the Maryland Casualty Company.

3. On July 27, 1951 plaintiff was told to return to work by the doctor treating him for the defendant. The doctor testified, however, that it was not his intention that the plaintiff report to work as fit for duty; that his advising the plaintiff to return to work was based on his belief that the plaintiff should give his foot a therapeutic trial to see how it would react to use on the job. In view of the obviously deformed condition of the plaintiff's foot and the medical testimony given at the trial, it is difficult to understand how any doctor could have suggested that the plaintiff return to work, even for a therapeutic trial.

4. Plaintiff did not return to work nor did he return to defendant's doctor for further treatment. He advised his attorney of the doctor's instructions and from that point on his relations with his employer and its insurer were handled through his attorney.

5. Plaintiff was examined by Dr. Harry Morris of the Ochsner Clinic on August 27, 1951. Dr. Morris found that plaintiff was totally disabled by reason of his foot injury and that plaintiff had reached a maximum result from conservative treatment. He recommended an operation on the foot which he said, if successful, would leave plaintiff with a 35% disability in his foot, but able to do work similar to that he was doing at the time of the accident.

6. The operation suggested by Dr. Morris was one which required a general anaesthetic, two hours on the operating table, and immobilization of the foot for twelve to sixteen weeks. The operation would involve the cutting open of plaintiff's foot to the subastragular bone joint, cutting off the edges of six bones at three joints, and their fusion. It would also involve the cutting open of plaintiff's foot at the midtarsal joints and cutting off the edges of eight bones, or four joints, and the fusion of these bones at the site of the joints. The proposed operation, if successful, would eliminate all motion in the plaintiff's foot and the inversion-eversion motion of the ankle, the subastragular joint being one of the two joints by which the foot is connected to the ankle. Assuming a successful operation, the disability in the foot would be 35%.

7. After July 27, 1951 the plaintiff received no further compensation checks from the defendant. The defendant's evidence indicates that his insurer was unaware of plaintiff's whereabouts after that date. The insurer admitted, however, that there was in its file a letter dated April 21, 1951 from counsel for the plaintiff advising of their representation and suggesting the possibility of amicable settlement of the claim. In any event, the defendant has not paid compensation to the plaintiff since July 27, 1951 and refuses so to do.

8. Plaintiff at the request of the defendant was examined by Dr. Jack Wickstrom on December 6, 1951. Dr. Wickstrom also found the plaintiff disabled by reason of his foot injury and also recommended an operation similar to the operation recommended by Dr. Morris. Dr. Wickstrom testified that the operation, if successful,

would give the plaintiff a foot with disability evaluated at not more than 35%.

9. Both Dr. Morris and Dr. Wickstrom admitted that there was a remote possibility of death resulting from the operation due to the anaesthesia, pulmonary embolii or infection. Both admitted that, in medical parlance, such an operation would be termed a major operation, and that if the fusion of all of the various bones and joints was not effected in the first operation, a second operation would become necessary. In this connection it is noteworthy that Dr. Houston, who treated plaintiff for the defendant and insurer, did not recommend an operation at any time during the course of the treatment or in his report thereof to the insurer. He apparently was interested in a therapeutic trial.

10. Dr. Salatich, who testified for the plaintiff, disagreed with the opinions of Drs. Morris and Wickstrom. Dr. Salatich testified that he would not recommend an operation for the plaintiff because, in view of the damage to the soft tissue surrounding the bones and joints in question, there is a possibility that the surgical wound would not heal properly. Dr. Salatich also stated that even if the bony symptoms were relieved by operation, plaintiff would still be totally disabled by reason of the pain and swelling resulting from the soft tissue injuries.

### Conclusions of Law

■ 1. This suit was properly brought by the plaintiff and this court has jurisdiction thereof. Louisiana Statutes Annotated—Revised Statutes 23:1314; D'Antoni v. Employers' Liability Assurance Corporation, 213 La. 67, 34 So.2d 378; Hammett v. Cities Service Refining Corporation, 216 La. 245, 43 So.2d 596; Aetna Casualty and Surety Company v. Flowers, 330 U.S. 464, 67 S.Ct. 798, 91 L.Ed. 1024; Thompson v. Thompson, 226 U.S. 551, 33 S.Ct. 129, 57 L.Ed. 347; Brotherhood of Locomotive Firemen & Enginemen v. Pinkston, 293 U. S. 96, 100, 55 S.Ct. 1, 79 L.Ed. 219.

■■ 2. Plaintiff was justified in failing to return to work as instructed by defendant's doctor and in seeking his own medical advice. There is no requirement under the Louisiana Workmen's Compensation Statute that the employee accept treatment from the employer's doctors. He is required, however, to submit to medical examination. The record shows that the plaintiff not only submitted to the required medical examination but actually allowed the defendant's insurer's doctor to treat him for a period of four months at the end of which he instructed plaintiff to return to work with his deformed foot. Louisiana Statutes Annotated—Revised Statutes 23:-1124, 1203; Scott v. E. J. Deas Company, Inc., 3 La.App. 374; Delafield v. Maples, La.App., 6 So.2d 41.

■ 3. Under the Louisiana Workmen's Compensation Act where the employee's condition is such that he cannot perform work similar to that in which he was engaged when injured, he is entitled to compensation based on total disability for the period of his disability not exceeding four hundred weeks. Knispel v. Gulf States Utilities Co., Inc., 174 La. 401, 141 So. 9; Hughes v. Enloe, 214 La. 538, 38 So.2d 225; Scott v. Hillyer, Deutsch, Edwards, Inc., 217 La. 596, 46 So.2d 914.

■ 4. Plaintiff is totally disabled by reason of the accident of March 15, 1951.

5. The medical evidence is in dispute as to whether the plaintiff should submit to a surgical operation on his foot and as to whether, in the event of a successful operation, plaintiff would be able to perform duties similar to those he was performing at the time of the accident. The doctors who testified that he would be able to perform similar duties admit that a successful operation will still leave the plaintiff with a 35% disability of the foot.

■ 6. The operation suggested by Dr. Morris and Dr. Wickstrom in this case is not one which the courts of Louisiana will require a claimant to undergo and since plaintiff is under no obligation to submit to this operation he may not be penalized for refusing to submit. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Malone, "Louisiana Workmen's Compensation Law & Practice", pp. 287–290; Bronson v. Harris Ice Cream Co., 150 La. 455, 90 So. 759; Simmons v. Blair, 194 La.

672, 194 So. 585; Yarbrough v. Great American Indemnity Co., La.App., 159 So. 438; Hall v. Mengel Co., Inc., La.App., 191 So. 759; Leday v. Lake Charles Pipe & Supply Co., La.App., 185 So. 655; Addison v. Powell Lumber Co., 1 La.App. 210; Martin v. Wyatt Lumber Co., 4 La.App. 157; Sybille v. Kelly Weber Co., 10 La.App. 374, 121 So. 640; Moore v. List & Weatherly Const. Co., La.App., 144 So. 147.

Judgment for plaintiff.