**Alger HISS et al., Plaintiffs,**

v.

**Robert E. HAMPTON, Chairman, United States Civil Service Commission, et al., Defendants.**

Civ. A. No. 1978-70.

United States District Court, District of Columbia.

March 3, 1972.

Sanford J. Rosen, New York City, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Melvin L. Wulf, New York City, and Hope Eastman, Washington, D. C., were on brief for plaintiffs.

George W. Calhoun, Atty., Dept. of Justice, with whom Robert C. Mardian, Asst. Atty. Gen., and Benjamin C. Flannagan, Atty., Dept. of Justice, were on brief for defendants.

Before ROBB, Circuit Judge, and BRYANT and SMITH, District Judges.

ROBB, Circuit Judge:

Plaintiffs Alger Hiss and Richard Strasburger, former employees of the federal government, applied for annuities under the Civil Service Retirement Act. 5 U.S.C. §§ 8331–8348. Their applications were denied by the Civil Service Commission upon the ground that payment to them was prohibited by certain provisions of Public Law 87–299, now codified as 5 U.S.C. §§ 8311–8322, commonly known as the "Hiss Act".[1] The plaintiffs challenge that denial. Plaintiff Strasburger's wife, as his designated beneficiary and as the recipient

---

1. The original Hiss Act, Pub.L. No. 83–769, 68 Stat. 1142, was enacted on September 1, 1954. It was amended on July 31, 1956 by Pub.L. No. 84–854, 70 Stat. 761 and on September 26, 1961 by Pub.L. No. 87–299, 75 Stat. 640. On September 6, 1966 the entire Act was codified as 5 U.S.C. §§ 8311–8322 by Pub.L. No. 89–554, 80 Stat. 557. See 12 U.S.C. p. 13571 (1970) (Popular Name Index) ; 1 Shepard's Acts and Cases by Popular Names : Federal and State 340 (1968).

of survivor benefits under 5 U.S.C. § 8341, joins in the action.

The plaintiffs seek a declaration that the Hiss Act is unconstitutional on its face and as applied to them; or in the alternative that it is not applicable to them. The complaint prays further for an order enjoining the defendants from applying the Act to the plaintiffs and requiring the defendants to make all past-due annuity payments to the plaintiffs. Finally, the complaint alleges that the plaintiffs are proper representatives of all persons similarly situated, making this a valid class action within the intendment of Rule 23, Fed.R.Civ.P., and the plaintiffs therefore seek relief for all members of the class, as well as themselves.

The defendants admit that plaintiffs are "annuitants" or individuals generally qualified for annuity benefits under 5 U.S.C. §§ 8331–8348. The defendants assert, however, that the provisions of the Hiss Act forbid payment of these benefits to the plaintiffs, and that the Act is constitutional and applies to the plaintiffs.

The material facts are not in dispute and the action is before us on cross motions for summary judgment.

The ruling of the Commission in the case of plaintiff Hiss was based on 5 U.S.C. § 8312; and in Strasburger's case, upon 5 U.S.C. § 8315. Accordingly, we state the cases separately.

### The Case of Plaintiff Hiss

Alger Hiss entered the federal service October 1, 1929, and thereafter was employed by the government in various capacities. On January 15, 1947 he resigned from his last federal position, which was with the Department of State. His total federal service for retirement purposes is approximately fifteen years. On November 11, 1966, his sixty-second birthday, he met the age and service requirements for a civil service retirement annuity at the rate of $61.00 per month.

On January 27, 1967 Hiss filed a claim for his annuity. By letter dated April 24, 1967 the Director of the Civil Service Commission's Bureau of Retirement and Insurance notified Hiss that he was barred from receiving a retirement annuity by section 1(a) (3) (B) of Public Law 87–299, approved September 26, 1961 (The Hiss Act). The section of the Act to which the Director referred is now codified as part of 5 U.S.C. § 8312 and provides that:

(a) An individual, or his survivor or beneficiary, may not be paid annuity or retired pay on the basis of the service of the individual which is creditable toward the annuity or retired pay, subject to the exceptions in section 8311(2) and (3) of this title, if the individual—

(1) was convicted, before, on, or after September 1, 1954, of an offense named by subsection (b) of this section, to the extent provided by that subsection;

    \*    \*    \*    \*    \*    \*

(b) The following are the offenses to which subsection (a) of this section applies if the individual was convicted before, on, or after September 1, 1954:

    \*    \*    \*    \*    \*    \*

(3) Perjury committed under the statutes of the United States or the District of Columbia—

    \*    \*    \*    \*    \*    \*

(B) in falsely testifying before a Federal grand jury, court of the United States, or court-martial with respect to his service as an employee in connection with a matter involving or relating to an interference with or endangerment of, or involving or relating to a plan or attempt to interfere with or endanger, the national security or defense of the United States . . ..

The Director informed Hiss that the basis of his ruling was:

The Commission has information to the effect that you were indicted by the Grand Jury impanelled and sworn

in the United States District Court for the Southern District of New York on December 15, 1948 for violation of title 18, section 1621 of the United States Code (perjury). This indictment was a result of your testimony before the aforesaid Grand Jury investigating possible violations of espionage laws of the United States and other criminal statutes. In addition, the Commission has information that you were convicted of the aforesaid perjury violation on January 21, 1950 and were sentenced to five years' imprisonment on January 25, 1950. (Copies of certified court records attached.)

The indictment and conviction to which the Director referred occurred in the case of United States v. Hiss, c 128/40 (S.D.N.Y. Jan. 25, 1950), in the United States District Court for the Southern District of New York. Indicted on two counts for perjury, Hiss was found guilty by a jury and sentenced to imprisonment for a term of five years on each count, the sentences to run concurrently. The judgment was affirmed. United States v. Hiss, 185 F.2d 822 (2d Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683 (1951). A motion for a new trial on the ground of newly discovered evidence was denied. United States v. Hiss, 107 F.Supp. 128 (S.D.N.Y.1952), aff'd, 201 F.2d 372 (2d Cir.), cert. denied, 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368 (1953).

The Director's letter of April 24, 1967 informed Hiss that he was entitled to a refund of his retirement contributions. He was further informed that he had a right to submit an answer and to request a hearing before a final decision was made. Hiss waived a hearing and submitted his case to a hearing examiner on a stipulated record. On June 26, 1968 the examiner issued a decision sustaining the denial of Hiss' claim for an annuity. On appeal the Civil Service Commission on October 22, 1968 sustained the examiner by adopting his findings, conclusions and decision as its own. Having thus exhausted his administrative remedies Hiss commenced this suit. He has not requested or received a refund of his contributions to the annuity fund, which would amount to approximately $3,556, exclusive of interest.

### The Case of Richard Strasburger

Plaintiff Richard Strasburger was employed by the Post Office Department in various clerical capacities from December 2, 1930 until February 10, 1950. On September 13, 1964, his sixty-second birthday, he met the age and service requirements for a civil service retirement annuity at the rate of $122.00 per month.

Thereafter Strasburger applied for his annuity. On December 17, 1964 the Chief of the Bureau of Retirement and Insurance of the Civil Service Commission denied the application upon the ground that Strasburger was barred from receiving a civil service annuity by section 2 of Public Law 83–769, as amended by Public Law 87–299, approved September 26, 1961. This section, now codified as part of 5 U.S.C. § 8315, reads as follows:

(a) An individual, or his survivor or beneficiary, may not be paid annuity or retired pay on the basis of the service of the individual which is creditable toward the annuity or retired pay, subject to the exceptions in section 8311(2) and (3) of this title, if the individual knowingly and willfully made or makes a false, fictitious, or fraudulent statement or representation, or knowingly and willfully concealed or conceals a material fact—

(1) before, on, or after September 1, 1954 concerning his—

(A) past or present membership in, affiliation or association with, or support of the Communist Party, or a chapter, branch, or subdivision thereof, in or outside the United States . . .

\*    \*    \*    \*    \*    \*

in a document executed by the individual in connection with his employment in, or application for, a civilian or military office or position in or under

the legislative, executive, or judicial branch of the Government of the United States or the government of the District of Columbia.

The specific ground for the denial of Strasburger's application was that "it has been determined that you were a member of the Communist Party and that you knowingly and wilfully made false statements and concealed material facts with respect to that membership". Strasburger appealed this decision to the Civil Service Commission. While the appeal was pending he applied under protest for a refund of his contributions to the annuity fund, and he received a refund of $3,025.96.

The record does not spell out the course of Strasburger's appeal between 1964 and 1966. On February 8, 1966, however, the General Counsel of the Civil Service Commission wrote to Strasburger, informing him that the Commission had decided to reopen and readjudicate his case in accordance with the decision of the United States Court of Claims in *Garrott v. United States*, 340 F.2d 615, 169 Ct.Cl. 186, decided January 22, 1965. In that case the court held that before an annuity could be denied under Public Law 87–299 an annuitant was entitled to a personal hearing with the right to question witnesses and to offer evidence in his behalf.

The general counsel's letter of February 8, 1966 was followed by various procedural steps, including a letter to Strasburger from the Director of the Commission's Bureau of Retirement and Insurance. This letter, dated September 13, 1966, notified Strasburger of the Director's intention to deny his claim and stated the Director's reasons as follows:

Your annuity was terminated on the basis of a finding by the Commission based upon evidence in your file that during the period approximately 1935 to approximately October 1945, you were a member of the Communist Party and that you did knowingly and willfully make false representations and conceal material facts with respect to such membership in a signed statement executed by you to representatives of the Federal Bureau of Investigation on March 25, 1942, and in a signed affidavit executed by you on December 31, 1940, while employed with the Post Office Department at Philadelphia, Pennsylvania.

Strasburger requested a hearing, which was held July 20, 1967. At the hearing it was stipulated orally by his counsel, and later confirmed in writing, that Strasburger had been a member of the Communist Party during the approximate period from 1935 to 1945 and that in an affidavit executed before a postal official on December 31, 1940, and again in a statement to the Federal Bureau of Investigation on March 24, 1942, he denied that he had ever been a member of the Communist Party.

The initial decision of the hearing examiner, issued July 16, 1968, upheld the earlier decision of the Director to deny Strasburger's annuity. On appeal, the Civil Service Commission adopted the decision of the hearing examiner as its own. This lawsuit followed.

### Jurisdiction

The defendants challenge the jurisdiction of this court upon the ground that the amount in controversy is less than $10,000, the jurisdictional amount specified by 28 U.S.C. § 1331. According to the defendants, if Hiss prevails he will be entitled to recover only past due annuity payments, an amount less than $10,000; and if Strasburger prevails he will be entitled only to a similar judgment. The defendants assert that payments which will become due in the future may not be considered in determining the amount in controversy, and conclude that the court's only jurisdiction is over the United States pursuant to 28 U.S.C. § 1346(a) (2), known as the Tucker Act.

The defendants argue that future payments may be counted in making up the requisite amount in controversy only

when the obligation to pay in the future is not within the control of the obligor; that in those circumstances the obligor has no power to avoid the duty to pay if the court's decision is adverse to him, and the decree will therefore finally create an obligation to pay. See C. Wright, Federal Courts § 33, at 116 (2d ed. 1970); Thompson v. Thompson, 226 U. S. 551, 559–560, 33 S.Ct. 129, 57 L.Ed. 347 (1913). In this case, say the defendants, a declaratory decree will not finally settle the obligation to pay, for Congress may withhold or withdraw annuity payments at any time. See Stouper v. Jones, 109 U.S.App.D.C. 106, 284 F.2d 240 (1960).

■ We are not persuaded by the defendants' jurisdictional argument. The possibility that Congress will terminate the payment of annuities to former federal employees is, we think, too remote and speculative to support the defendants' conclusion. The contrary hypothesis, that such annuities will continue, seems to us the only one that is reasonably justified. This being so, the prospect of future payments to the plaintiffs must be considered in computing the present value of their claims. When so computed on an actuarial basis the amount of each claim is in excess of $10,000, exclusive of interest. *See* Brotherhood of Locomotive Firemen and Enginemen v. Pinkston, 293 U.S. 96, 101, 55 S.Ct. 1, 79 L.Ed. 219 (1934). Certainly, we cannot say "to a legal certainty that the claim is really for less than the jurisdictional amount", so that dismissal is justified. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938).

■ Although we hold that the court has jurisdiction over the plaintiffs' action, we think this is not a proper class action. We are told that only seven persons may be denied annuities under the provisions of the Act which apply to Hiss and Strasburger. Rule 23(a), Fed.R.Civ.P., provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable". Assuming, as the plaintiffs contend, that there are common questions of fact and law in each of the seven cases, the joinder of the seven parties would not be impracticable. The claim for relief for a class will be dismissed.

*The Statute Applies to Both Plaintiffs*

■ Plaintiff Alger Hiss was denied his annuity because the Civil Service Commission found that his conviction of perjury was an offense to which 5 U.S. C. § 8312(b) (3) (B) applied. Specifically, the Commission found that the statute applied because Hiss had been "convicted of perjury in falsely testifying before a federal grand jury * * * with respect to his services as an employee in connection with a matter involving or relating to an interference with or endangerment of or involving or relating to a plan or attempt to interfere with or endanger, the national security or defense of the United States". Hiss contends that the record does not warrant the finding that the perjury of which he was convicted involved "an interference with or endangerment of * * * the national security or defense of the United States". We think the record in the perjury case conclusively refutes this argument.

The first count of the indictment upon which Hiss was tried and convicted alleged that he appeared as a witness before a grand jury which was "conducting an investigation * * * pertaining to possible violations of espionage laws of the United States and any other federal criminal statutes". The indictment then alleged:

3. That it was material to this investigation to ascertain whether the espionage or other statutes of the United States had been violated by the unlawful abstraction or removal of secret, confidential or restricted documents, writings, sketches, notes or other papers by persons employed by the United States Government, or by the furnishing, delivery or transmittal of any such documents, writings,

sketches, notes or other papers to any unauthorized persons, and whether the defendant Alger Hiss had any knowledge of any such violation.

4. That at the time and place aforesaid, the defendant Alger Hiss, duly appearing as a witness before the said Grand Jurors, and then and there being under oath as aforesaid, and having been duly advised of the nature of the investigation then and there being conducted, testified falsely before said Grand Jurors with respect to the aforesaid material matter as follows:

Q Mr. Hiss, you have probably been asked this question before, but I'd like to ask the question again. At any time did you, or Mrs. Hiss in your presence, turn any documents of the State Department or of any other Government organization, or copies of any documents of the State Department or any other Government organization, over to Whittaker Chambers? A Never. Excepting, I assume, the title certificate to the Ford.

Q In order to clarify it, would that be the only exception? A The only exception.

JUROR: To nobody else did you turn over any documents, to any other person?

THE WITNESS: And to no other unauthorized person. I certainly could have to other officials.

That the aforesaid testimony of the defendant, as he then and there well knew and believed, was untrue in that the defendant, being then and there employed in the Department of State, in or about the months of February and March, 1938, furnished, delivered and transmitted to one Jay David Whittaker Chambers, who was not then and there a person authorized to receive the same, copies of numerous secret, confidential and restricted documents, writings, notes and other papers the originals of which had theretofore been removed and abstracted from the possession and custody of the Department of State, in violation of Title 18, United States Code, Section 1621.

The evidence in the perjury case against Hiss is summarized in the opinion of the Circuit Court of Appeals affirming his conviction. United States v. Hiss, 185 F.2d 822 (2d Cir. 1950). That evidence, believed as it plainly was by the jury, was to the effect that Hiss, a Communist in the employ of the Department of State, turned over to Whittaker Chambers, a Communist courier or liaison man, many secret or confidential documents abstracted from the files of the Department. These documents were "of such a nature that even at the comparatively late day of their disclosure some could not for security reasons safely be made public * * *". 185 F.2d at 828. When the allegations of the indictment, the evidence at trial, and the verdict of the jury are considered together we think it flies in the face of common sense to suggest that the offense of which Hiss was convicted did not relate to the national security or defense of the United States.

■ The plaintiff Strasburger's annuity was denied because the Civil Service Commission found that he knowingly and wilfully made a false statement concerning his past or present membership in the Communist Party in a document executed by him in connection with his federal employment. The Commission concluded that such conduct fell within the scope of 5 U.S.C. § 8315(a) (1) (A). Although he admits that his answers were false, Strasburger contends that since the government could not constitutionally ask the question put to him he cannot be denied his annuity for falsely answering. He argues also that the statute does not apply to him because he did not occupy a "sensitive" position, and there is no evidence that he was guilty of disloyalty or subversion. We think, however, that his arguments miss the point and that the statute applies to him. The conduct to which the statute applies is not subversion or disloyalty,

or membership in the Communist Party, it is the knowing and wilful making of a false statement. Strasburger did not refuse to answer the question, he answered it falsely, and his annuity was denied because he lied. As the Supreme Court has observed, lying is not one of the methods provided by our system for challenging the government's right to ask a question. Bryson v. United States, 396 U.S. 64, 72, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969). See also Berenyi v. District Director, Immigration and Naturalization Service, 385 U.S. 630, 87 S. Ct. 666, 17 L.Ed.2d 656 (1967).

### The Hiss Act is an Ex Post Facto Law

■ Having disposed of these contentions of the parties we turn to the plaintiffs' argument that the Hiss Act is unconstitutional as an *ex post facto* law. In this we think the plaintiffs are right.

The Constitution, Article I, Section 9, Clause 3, provides that "No Bill of Attainder or ex post facto Law shall be passed". In many cases, beginning with Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), the Supreme Court has defined an *ex post facto* law. *See* Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 138, 3 L.Ed. 162 (1810); Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 325–329, 18 L.Ed.2d 356 (1866); Hawker v. New York, 170 U.S. 189, 191, 18 S.Ct. 573, 42 L.Ed. 1002 (1898); De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). In Fletcher v. Peck, 10 U.S. (6 Cranch) 87, 138, 3 L.Ed. 162 (1810), the Court, speaking through Mr. Chief Justice Marshall, held that an *ex post facto* law "is one which renders an act punishable in a manner in which it was not punishable when it was committed"; and in Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 320, 18 L.Ed. 356 (1866) the Court made it clear that "[t]he deprivation of any rights, civil or political, previously enjoyed, may be punishment * * * *". Here it is plain that the deprivation of the plaintiffs' annuities may be punishment within the prohibition against *ex post facto* laws.

The plaintiffs argue that the Act is invalid because it applies to conduct that occurred before it was passed, increases the penalties or disabilities exacted for such conduct, and is essentially punitive. The defendants reply that even if the Act imposes a penalty or disability it also has a regulatory purpose and should be sustained on that ground. This regulatory purpose, say the defendants, is "to clear the moral climate" among government employees, and promote their honesty and integrity. Denial of monetary benefits arising from government employment is said to be a "relevant incident" to such regulation.

■ Congress may impose penalties or disabilities for prior conduct if "the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession". De Veau v. Braisted, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960); *see* Flemming v. Nestor, 363 U.S. 603, 613–621, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). On the other hand a statute is an *ex post facto* law, and invalid, if its purpose and effect are to punish for past conduct and not to regulate a profession, calling or present situation. Cummings v. Missouri, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356 (1866); Ex parte Garland, 71 U.S. (4 Wall.) 333, 18 L.Ed. 366 (1866).

We think the disabilities imposed upon the plaintiffs by the Hiss Act are punitive and not regulatory. Neither Hiss nor Strasburger was a federal employee at the time the Act was passed, and we do not understand how the conduct of federal employees could be regulated or their moral standards elevated by imposing a financial penalty for their prior conduct upon men who were not federal employees or likely ever again to become federal employees. Retroactive punishment of former employees for their past misdoings has no reasonable bearing upon regulation of the conduct of those presently employed. The proper function of regulation is to guide and control present and future conduct, not

to penalize former employees for acts done long ago.

Our conclusion that the statute, as applied retroactively to plaintiffs, is penal rather than regulatory, is supported by the legislative history of the Hiss Act. Although courts should not strike down "an otherwise constitutional statute on the basis of an alleged illicit legislative motive", United States v. O'Brien, 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968); Palmer v. Thompson, 403 U.S. 217, 224–226, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971); Arizona v. California, 283 U.S. 423, 455, 51 S.Ct. 522, 75 L.Ed. 1154 (1931), the intent or purpose of Congress may determine whether a particular law is penal or regulatory. Trop v. Dulles, 356 U.S. 86, 95–97, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Therefore it is appropriate that we now consider the "objective manifestations of congressional purpose" in enacting the Hiss Act. See United States v. O'Brien, 391 U.S. 367, 383 n. 30, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

There is substantial evidence in the "objective manifestations of congressional purpose" that the primary target of the Act was Alger Hiss and not general regulation of the federal service.

We take notice that the trial and conviction of Alger Hiss received widespread attention. This attention was renewed when it was realized, at the time Hiss was about to be released from prison in 1954, that despite his conviction he would be eligible to receive federal annuity payments upon reaching the age of sixty-two. As a result ten bills were introduced in the House. The original bill was enacted in 1954, Pub.L. No. 83–769, 68 Stat. 1142, and a minor amendment was added in 1956, Pub.L. No. 84–854, 70 Stat. 761. Further amendments were proposed in 1959 and 1960 and were enacted in 1961. Pub.L. No. 87–299, 75 Stat. 640. In 1966 the statute was codified in Title 5 of the United States Code, 5 U.S.C. §§ 8311–8322. House and Senate Committee Reports on the proposed statute and on proposed amendments were published in 1954, 1959, 1960 and 1961.[2] Committee hearings on the proposed legislation were held in each of those years except 1960.[3] Floor debate took place in each year.[4]

We mention a few of the many objective manifestations which we think fairly evidence the congressional purpose.

On June 22, 1954 the House Committee on Post Office and Civil Service held a hearing on the ten bills which had been introduced. *Hearing on H.R. 1239, 3301, 5299, 6940, 7001, 7381, 7476, 8091, 8547, and 8712 Before the House Comm. on Post Office and Civil Service*, 83d Cong., 2d Sess. (1954) [hereinafter cited as *1954 House Hearing*]. The testimony of the supporters of the bills made it plain that their target was Alger Hiss. Thus, Representative Clardy stated that "I am not opposed to the adoption of a

---

2. H.R.Rep. No. 2488, 83d Cong., 2d Sess. (1954); S.Rep. No. 2231, 83d Cong., 2d Sess. (1954); H.R.Rep. No. 258, 86th Cong., 1st Sess. (1959); S.Rep. No. 144, 86th Cong., 1st Sess. (1959); S.Rep. No. 1544, 86th Cong., 2d Sess. (1960); H.R. Rep. No. 541, 87th Cong., 1st Sess. (1961); S.Rep. No. 862, 87th Cong., 1st Sess. (1961).

3. *Hearing on H.R. 1239, 3301, 5299, 6940, 7001, 7381, 7476, 8091, 8547, and 8712 Before the House Comm. on Post Office and Civil Service*, 83d Cong., 2d Sess. (1954); *Hearings on H.R. 4601 and Related Bills Before the House Comm. on Post Office and Civil Service*, 86th Cong., 1st Sess. (1959); *Hearing on S. 91 Be-fore The Subcomm. on Retirement of the Senate Comm. on Post Office and Civil Service*, 86th Cong., 1st Sess. (1959); *Hearing on H.R. 6141 and Related Bills Before the House Comm. on Post Office and Civil Service*, 87th Cong., 1st Sess. (1961); *Hearings on H.R. 6141 Before the Subcomm. on Retirement of the Senate Comm. on Post Office and Civil Service*, 87th Cong., 1st Sess. (1961).

4. 100 Cong.Rec. 13,134–36 (House 1954); 100 Cong.Rec. 14,780–84 (Senate 1954); 105 Cong.Rec. 5830–39 (House 1959); 106 Cong.Rec. 10,151–65 (Senate 1960); 106 Cong.Rec. 14,530–34 (Senate 1960); 107 Cong.Rec. 12,245–49 (House 1961); 107 Cong.Rec. 19,102–13 (Senate 1961).

bill that is general, but I put in my bill the name of Alger Hiss because at this moment he is the one outstanding character that ought to be treated in the way the bill suggests. * * * * I recognize the fact that a general bill would raise a lot of questions that have probably not yet arisen and there would be protracted debate and the bill perhaps would never get through, but I do not think any Member of Congress would have the hardihood to vote against a bill denying privileges to Alger Hiss, the traitor." *1954 House Hearing*, at 16. A member of the Committee expressed the opinion that if a "general bill" were passed it "could be called the Alger Hiss bill, and probably would be". *1954 House Hearing*, at 19. Indeed, the proposed legislation focused so sharply on Alger Hiss that before the hearings began the Committee invited him to submit a statement or to designate a representative to appear in his behalf. He declined the invitation. *See 1954 House Hearing*, at 14–15.

We find it significant also that the Civil Service Commission in 1954 expressed the opinion that the legislation exacted criminal penalties. In a letter to the Committee the Chairman of the Commission stated:

> These bills would introduce an entirely new concept to the retirement law which would in effect be inserting a criminal penalty in a civil statute, thereby enlarging the penalty already prescribed by Federal or State statute. . . . Such added penalty would be discriminatory in applying only to certain Federal or District of Columbia employees while other persons would not be subjected to similar punishment.
>
> Convictions for the offenses indicated carry penalties of jail sentences or

fines or both. If a monetary penalty is desirable in cases of this nature, this objective can be accomplished by the imposition of a fine by the judge. Such fine, if unpaid, may be collected from amounts otherwise payable to the individual under the Retirement Act. The net result to be obtained is the mandatory imposition of an additional monetary penalty applying only to a restricted group or class of individuals, namely Federal officers and employees and their innocent survivors.

The Commission has consistently believed it desirable that: (1) crimes be defined and penalties for crime be established through criminal statutes; and (2) the punishment for an individual convicted of a crime be decided and sentence be imposed by the court which has appraised the degree of culpability in the light of all the facts in the case.[5]

The Committee Report on the bill referred to the "wide public concern" over the problem of annuities. H.R.Rep.No. 2488, 83d Cong., 2d Sess. 4 (1954). The report added that the legislation "will stand as a powerful and valuable deterrent to any individual who may be inclined *in the future* to break faith with his country in carrying out his official duties." *Id.* at 5 (emphasis supplied). The Report did not explain how the bill's deterrent purpose would be served by making its provisions retroactive to cover the cases of former employees.

In the discussion of the 1954 bill on the floor of the Senate, the case of Alger Hiss and the purpose to deny him a pension were again emphasized. As recorded in the Congressional Record for July 2, 1954, 100 Cong.Rec. 9604, the discussion appeared under the heading

---

5. *1954 House Hearing*, at 25. The Commission reiterated this view during the 1959–61 efforts to amend the Act. *See* H.Rep. No. 258, 86th Cong., 1st Sess. 11–13 (1959); S.Rep. No. 1544, 86th Cong., 2d Sess. 2–4 (1960); *Hearing on*

*H.R. 6141 and Related Bills Before the House Comm. on Post Office and Civil Service*, 87th Cong., 1st Sess. 11 (1961); H.R.Rep. No. 541, 87th Cong., 1st Sess. 10–13 (1961); S.Rep. No. 862, 87th Cong., 1st Sess. 13 (1961).

"Denial of a Federal Pension to Alger Hiss". Senator Mundt stated:

> Mr. President, much excitement was generated around town a week or so ago when it was erroneously reported in the press that the Civil Service Commission and the President of the United States were in favor of granting a pension to one Alger Hiss. Naturally, I was concerned when I read that statement, but I was gratified when I read the succeeding issues of the newspapers to learn that the President of the United States was the first to disavow any such intention, and to say that he was thoroughly convinced that Alger Hiss should not receive a public pension.
>
> \*    \*    \*    \*    \*    \*
>
> As the author of the first piece of proposed legislation to deny the pension to Alger Hiss, I was glad to read these disavowals.[6]

Senator Williams, who had introduced a similar bill, said:

> I join with the Senator from South Dakota in expressing the hope that legislation will be enacted to deny a pension to Alger Hiss.[7]

Finally, on August 17, 1954, the day the bill passed the Senate, Senator Mundt stated:

> I am perfectly willing to waive consideration of our bills and have the House bill passed, because any 1 of the 3 bills would achieve the desired result, namely, to deny to Alger Hiss, who will be eligible for parole sometime in the next 60 or 90 days, the opportunity to live the rest of his life on the taxpayers of America as a result of having been pensioned before he committed perjury and before his espionage activities had come to public attention.[8]

In 1959 the House Committee on Post Office and Civil Service held hearings on certain proposed amendments to the Act. Congressman Murray, Chairman of the Committee, who had been ranking minority member of the Committee when it reported out the 1954 bill, opened the hearings by stating that the Committee was about to take up proposed amendments to P.L. 769, and a bill to repeal that law, and he recognized that the 1954 Act focused on Alger Hiss:

> Public Law 769 is sometimes referred to as the "Alger Hiss Act." At the time this legislation was considered, in 1954, the primary concern was to prevent payment of a civil service retirement annuity to Alger Hiss, who then was scheduled to be released from a Federal penitentiary after serving a term for perjury in a matter involving subversive activities. However, a number of other far-reaching provisions were included in this legislation which seemed desirable at the time.
>
> \*    \*    \*    \*    \*    \*
>
> Experience under Public Law 769 has developed rather clear evidence, based on reports of the Civil Service Commission and from other sources, that many individuals have lost valuable annuities for offenses in no way related to security and under circumstances constituting gross miscarriage of justice in some cases. Many of these offenses were minor in nature and often the courts did not even assess penalties, yet the individuals, under the so-called Hiss Act, lost their annuities.[9]

Reporting out H.R. 4601, the Committee stated that the payment of benefits to individuals guilty of disloyalty:

> would be shocking to the public conscience and morals and repugnant to the high principles on which our Government is founded. This was made

6. 100 Cong.Rec. 9604 (1954).

7. 100 Cong.Rec. 9605 (1954).

8. 100 Cong. Rec. 14,780 (1954).

9. Hearings on H.R. 4601 and Related Bills Before the House Comm. on Post Office and Civil Service, 86th Cong., 1st Sess. 2 (1959).

abundantly evident, during the consideration of the bill that became Public Law 769, 83d Congress, by a tremendous volume of protests to Members of Congress against payment of a civil service retirement annuity to a former Government employee then about to be released from a Federal penitentiary after serving a penal term for a conviction of perjury in a proceeding before a Federal grand jury involving a security matter. The overwhelming weight of testimony before this committee on such legislation supported these vehement and widespread protests.[10]

When H.R. 4601 reached the floor, Congressman Murray again stated:

This law, which was enacted in 1954 and which the present legislation modifies, was passed as a result of the conviction of one Alger Hiss. At the time the legislation was considered by our committee, Alger Hiss who had been convicted of perjury in connection with national defense matters, was in a Federal prison but was soon to be released from prison.

Our committee felt very strongly that Alger Hiss who had betrayed our national security when he occupied a high position in our Government should be denied the opportunity of receiving benefits in the form of annuities from our Government. For that reason the legislation was passed in 1954, but, frankly, the legislation went too far.[11]

Congressman Rees of Kansas, who was Chairman of the Committee when the original Act was reported out in 1954, concurred in Congressman Murray's remarks, saying:

[T]he bill completely rewrites Public Law 769, 83d Congress. That law was enacted for the primary purpose of prohibiting Federal retirement benefits for individuals guilty of wrongful

acts or omissions in matters affecting the national security. The law was enacted in response to strong and widespread public demand. This demand arose because of the then pending payment of a civil service retirement annuity to an individual about to be released from a Federal penitentiary after serving a penal term for perjury before a Federal grand jury in a proceeding directly involving the national security. The entire country was deeply disturbed and indignant at the prospect that a Federal annuity could be paid in any such case.[12]

H.R. 4601 passed the House but was not acted on by the Senate.

As Congressman Murray said in opening the hearing on H.R. 4601 in 1959, and again in discussing the bill on the floor of the House, the original Act applied not only to Alger Hiss but to all federal employees convicted of certain crimes. The proposed amendments to the Act which were finally adopted in 1961 as P.L. 87–299, 75 Stat. 640, were prompted by the thought that the Act "went too far" by denying annuities to persons convicted of offenses that had no relation to the national defense. Accordingly, the 1961 amendments withdrew from the Act's coverage not only those convicted of minor crimes but also persons convicted of offenses such as murder, embezzlement and bribery; only those convicted of offenses relating to the national security or defense remained within the Act's prohibitions. In the hearings and debates on the amendments there was frequent reference to the theme stated on September 12, 1961 by Senator Olin D. Johnston, Chairman of the Committee on Post Office and Civil Service:

The truth of the matter is that the bill as drawn up then has *penalized* a great many Government employees who have committed minor offenses

---

10. H.R.Rep. No. 258, 86th Cong., 1st Sess. 5 (1959).

11. 105 Cong.Rec. 5831 (1959).

12. 105 Cong.Rec. 5833 (1959).

though that was not the intent of the legislation. We think the *punishments* have been absolutely wrong and have gone too far. (emphasis supplied)[13]

In the House, Congressman Murray stated that:

When the bill that became Public Law 769 was being considered in 1954, the chief concern was to prevent payment of a civil service retirement annuity to Alger Hiss, who then was about to be released from a Federal penitentiary after serving a term for perjury in a matter involving subversive activities. . . .

. . . Such provisions were not, and are not, needed to accomplish the principal purpose of denying retirement benefits in cases of offenses against the national security. In fact, they are harmful to such principal purpose because they link the innocent —as to security offenses—with the guilty by fixing the same *heavy penalty* for both regardless of the vast difference in measure of guilt. (emphasis supplied) [14]

The 1961 amendments furnish additional support for our conclusion that the retroactive application of the Act to the plaintiffs is penal and cannot be sustained as regulation of the government service. As we have noted, the premise of the amendments was that the Act imposed penalties or punishments, which in some cases were unjust. Moreover, section 2 of the Act as amended (Act of Sept. 26, 1961, Pub.L. No. 87–299, 75 Stat. 648) restored annuities to all "non-treasonous" criminals who had been denied benefits under the 1954 statute. Thus the right to receive annuities was restored to former government employees who had been convicted of such offenses as bribery, fraud, embezzlement, rape, and murder. The restoration to grace of such offenders makes it difficult for us to accept the government's contention that the retroactive condemnation of Hiss and Strasburger is incident to a regulation calculated to cleanse the government service. As applied to Hiss and Strasburger the Act does not regulate, it punishes.

The question before us is not whether Hiss and Strasburger are good or bad men, nor is it whether we would grant them annuities if we had unfettered discretion in the matter. The question is simply whether the Constitution permits Congress to deprive them of their annuities by retroactive penal legislation. We conclude that it does not. We hold that as applied retroactively to the plaintiffs the challenged statute is penal, cannot be sustained as regulation, and is invalid as an *ex post facto* law prohibited by the Constitution.

In accordance with this opinion the plaintiffs' motions for summary judgment will be granted.

---

13. 107 Cong.Rec. 19,106 (1961). *See, e. g.,* Hearings on H.R. 4601 and Related Bills Before the House Comm. on Post Office and Civil Service, 86th Cong., 1st Sess. (1959) ; 105 Cong.Rec. 5831, 5833–35 (House 1959) ; Hearing on S. 91 Before the Subcomm. on Retirement of the Senate Comm. on Post Office and Civil Service, 86th Cong., 1st Sess. (1959) ; Hearing on H.R. 6141 and Related Bills Before the House Comm. on Post Office and Civil Service, 87th Cong., 1st Sess. 11 passim (1961) ; 107 Cong.Rec. 12,246–48 (House 1961) ; Hearing on H.R. 6141 Before the Subcomm. on Retirement of the Senate Comm. on Post Office and Civil Service, 87th Cong., 1st Sess. 11 passim (1961) ; 107 Cong.Rec. 19,103–06 (Senate 1961).

14. 107 Cong.Rec. 12,246 (1961).